354 So.2d 1038 (1978)
STATE of Louisiana
v.
Joseph SHERER.
No. 60349.
Supreme Court of Louisiana.
January 30, 1978.
*1039 Philip A. LeTard, Vidalia, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. C. Falkenheiner, Dist. Atty., Glenn B. Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Joseph Sherer was charged by the grand jury in the same indictment with two separate counts of negligent homicide in violation of La.R.S. 14:32. After trial before a jury of six persons, defendant was found guilty as charged of both offenses. After the convictions, but prior to sentencing, the district attorney filed an information accusing defendant of three previous felony convictions under La.R.S. 15:529.1 (Habitual Offender Law). Defendant pled guilty to the habitual offender charge, admitting the three previous felony convictions, and was sentenced by the court to serve thirty years at hard labor. On appeal, defendant relies on five assignments of error for reversal of his convictions and sentence.[1]

ASSIGNMENT OF ERROR NO. 1
Defendant was tried by a jury of six persons for the offenses of negligent homicide. He contends the trial judge erred in denying his pretrial motion to be tried before a jury of twelve persons grounded on the claim that, because of his previous felony convictions, he was subject to being charged as a fourth offender under the Habitual Offender Law and sentenced thereunder to imprisonment of no less than twenty years. He argues that such a sentence would be necessarily at hard labor; therefore, he was entitled to be tried before a jury of twelve persons under La.Const. art. 1, § 17 and La.Code Crim.P. art. 782.
There is no merit to this contention. La. Const. art. 1, § 17 governs the number of persons comprising a jury, dependent upon the punishment in the criminal case involving defendant's guilt or innocence. La. Const. art. 1, § 17 provides in pertinent part:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, five of whom must concur to *1040 render a verdict. . . . (Emphasis added.)

La.Code Crim.P. art. 782 provides similarly.
The habitual offender proceeding is not applicable until after a person has been convicted of a felony within this state. La. R.S. 15:529.1(A) and (D). Thereafter, the filing of an information accusing the convicted felon of a previous conviction(s) is discretionary with the district attorney. La.R.S. 15:529.1(D). Hence, the habitual offender proceeding is a separate proceeding applicable only after conviction and then at the discretion of the district attorney. It forms no part of the punishment of the criminal case involving defendant's guilt or innocence; therefore, it has no bearing on the determination of the number of persons comprising the jury for the trial of the case.
In the instant case, defendant was charged with and tried for two separate counts of negligent homicide. La.R.S. 14:32 (negligent homicide) provides for a punishment of imprisonment "with or without hard labor" for not more than five years. Clearly, the punishment for the criminal case involving defendant's guilt or innocence is not necessarily confinement at hard labor requiring a trial before a jury of twelve persons. Rather, it provides for a punishment which may be confinement at hard labor. Accordingly, defendant was properly tried before a jury of six persons. La.Const. art. 1, § 17; La.Code Crim.P. art. 782. The trial judge correctly denied defendant's motion for a trial before a jury of twelve persons.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in admitting in evidence the result of an alcohol blood test given defendant on the grounds that the requirements of La.R.S. 32:661 were not met and that the state failed to establish a proper chain of evidence.
The instant prosecution arises from a serious traffic accident involving defendant's truck and two other vehicles on June 16, 1976 in Concordia Parish. At trial, Louisiana State Trooper James W. Farris testified that he investigated the accident. He stated that, when he arrived at the scene of the accident, defendant was still in his truck in an unconscious state. He testified that defendant's breath smelled of alcohol, beer cans were found in the truck, and the truck had crossed the center line of the highway. Trooper Farris further stated that, prior to defendant's removal from the scene in an ambulance, he told the ambulance driver that he was placing charges against defendant based on the physical evidence indicating that he had been driving while intoxicated. He instructed the driver to obtain a blood alcohol test on defendant, as he needed one in connection with those charges. After completing his investigation at the scene of the accident, Trooper Farris went to Jefferson Davis Hospital in Natchez, Mississippi, where defendant had been taken for emergency medical care. Upon arrival, he was informed that two of the female accident victims had been dead on arrival at the hospital. Defendant was unconscious; nevertheless, he advised him of his rights and requested his consent to the blood alcohol test. Naturally, he received no response. Thereupon, he requested a doctor to withdraw the blood for the test. Trooper Farris further testified that a "blood alcohol kit" supplied by the state of Louisiana was used to withdraw the blood sample.
Dr. Orrick Metcalf, Jr. testified that he treated defendant in the emergency room of Jefferson Davis Hospital for injuries sustained in the accident. During the course of his treatment, he withdraw fluid from defendant's stomach in an effort to relieve pressure on his respiratory tract. He stated that the fluid smelled "pretty strong" of alcohol. He instructed Mrs. Maddox to withdraw a blood sample which she did under his supervision.
Mrs. Carrie Maddox, a nurse anesthetist, testified that, upon Dr. Metcalf's instructions, she withdraw a blood sample from *1041 defendant who was unconscious at the time. She performed this act in the emergency room of the hospital. She stated that she cleansed the site of the vein with Betadine, not alcohol, and used a 10 cc. sterile syringe with a sterile needle to withdraw the blood. She then gave the blood sample to Trooper Farris.
Trooper Farris testified that he received the blood sample in a vial from Mrs. Maddox; the vial was sealed around the top and placed in a styrofoam box which was also sealed. He stated that he retained possession of it until the next day when he gave it to Trooper Blunschi for delivery to the crime lab in Baton Rouge.
Trooper Johnny Blunschi testified that he received the blood sample, still sealed in the styrofoam box, personally from Trooper Farris and delivered it to John Ricca at the state police crime lab in Baton Rouge.
John Ricca, certified by the Louisiana State Department of Health to perform chemical analyses of bodily substances (La. R.S. 32:663), testified that he received the blood sample from Trooper Blunschi on July 6, 1976. He stated that he refrigerated the sample until he made the analysis on July 15; the result of the test was .27 grams of alcohol per one hundred cubic centimeters of blood. He further testified that an absence of preservatives in a blood sample or failure to refrigerate the blood sample will not cause an increase in the alcoholic content thereof. Rather, once blood is taken out of the body, the alcoholic content can only decrease. He stated that he performed another analysis of the blood sample taken from defendant some six months after the initial analysis. During this period, the blood sample was not refrigerated. The result of the analysis was .23 grams of alcohol per one hundred cubic centimeters of blood, a decrease of .04 grams from the initial analysis.
Dr. Allen M. Read, a certified pathologist, testified that, if preservatives are not added to the blood, the sample is not refrigerated, and the sample is contaminated with bacteria, then it is possible, but highly unlikely, that the alcoholic content of the sample would increase. More likely, the opposite result would obtain, i. e., a decrease in the alcoholic content.
Defendant argues first that the blood sample was illegally withdrawn from him on the grounds that he was not under arrest at that time, had not consented to the test, and Trooper Farris had no authority in Mississippi to order the taking of the blood sample.
In substance, La.R.S. 32:661(A) provides that a person operating a motor vehicle on the public highways of this state shall be deemed to consent to chemical tests to determine the alcoholic content of his blood "if arrested" for a motor vehicle offense while believed to be under the influence of alcoholic beverages.[2] La.R.S. 32:661(B) provides that this implied consent is not withdrawn if the person is dead or unconscious or otherwise incapable of refusing to take the tests.[3] La.Code Crim.P. art. 201 defines "arrest" as follows:

*1042 Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
The statutory definition of "arrest" is keyed to the concept of restraint. It is the circumstances indicating intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer's statement: "You are under arrest," that are determinative of when an arrest is actually made. State v. Marks, 337 So.2d 1177 (La.1976); State v. Breaux, 329 So.2d 696 (La.1976); State v. Warren, 283 So.2d 740 (La.1973).
In the instant case, Trooper Farris told the ambulance driver that he was placing charges against defendant based on the physical evidence indicating that he had been driving while intoxicated. He further instructed the driver to obtain a blood alcohol test on defendant as he needed one in connection with those charges. Defendant was unconscious and in need of medical care; it was not possible to physically detain defendant without seriously jeopardizing his health. Moreover, there was no need to detain defendant who was obviously incapable of escape. Under the circumstances, we find a clear intent on the part of Trooper Farris to effect a restraint on defendant, to the extent possible, at the scene of the accident. Hence, defendant was "arrested" in Louisiana.
Furthermore, defendant remained unconscious at the hospital, a condition rendering him incapable of refusal to submit to the alcohol blood test. Hence, under La.R.S. 32:661(B), his implied consent was not withdrawn; and the testing was permissible.
Finally, having found that an arrest occurred in Louisiana for an offense arising out of acts alleged to have been committed while driving a motor vehicle on a public highway of this state while believed to be under the influence of alcoholic beverages and the implied consent to an alcohol blood test was not withdrawn, we find that the fact that the blood sample was taken at a Mississippi hospital where defendant was taken for emergency medical treatment did not vitiate that implied consent.
Next, defendant contends that the state failed to establish a proper chain of evidence for admission of the result of the alcohol blood test. Specifically, defendant argues that the state failed to prove that the sample had not been contaminated due to improper procedure in withdrawing the blood sample, failure to refrigerate the sample, or tampering with the sample.
It is well settled that a preponderance of the evidence on the question of admissibility is sufficient. State v. Graham, 278 So.2d 78 (La.1973); State v. Coleman, 254 La. 264, 223 So.2d 402 (1969). It is not necessary that all possibility of alteration be eliminated for evidence to be admissible, as long as the evidence establishes connexity by a preponderance of the evidence. State v. Rittiner, 341 So.2d 307 (La. 1977); State v. Singleton, 311 So.2d 881 (La.1975).
In the instant case, Mrs. Maddox testified that she cleansed the site of defendant's vein with Betadine, not alcohol, and used a sterile syringe and a sterile needle to take the blood sample which was then sealed in a vial. Mr. Ricca testified that failure to refrigerate the blood sample did not cause an increase of alcohol therein and, further, that an alcohol analysis made six months after the initial analysis showed a decrease in the alcoholic content of the blood sample, although it had not been refrigerated. Dr. Read testified that an increase in the alcoholic content is highly unlikely, even if no preservatives are added to the blood sample and the sample is not refrigerated. Unbroken chain of custody of the blood sample from its initial withdrawal from defendant's vein until delivery to Mr. Ricca who performed the alcohol analysis was established by the testimony of those who personally possessed the sample during that interval. Clearly, the state met its burden of proving a proper chain of evidence. Hence, the trial judge did not err in allowing its introduction in evidence.
*1043 Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for a mistrial on the ground that the state's witnesses were not sequestered as requested by defendant under La.Code Crim.P. art. 764. Specifically, he argues that they were allowed to discuss the case among themselves during the course of trial.
The trial lasted three days, the first two of which were devoted primarily to the state's case-in-chief. At the beginning of trial, the judge asked defendant if he wished to have the witnesses sequestered prior to opening statements. Defendant indicated that he preferred to wait until the testimony began. Before any testimony was taken, the trial judge instructed the state to call its witnesses so that they could be placed under the rule of sequestration. Only three of the state's witnesses were present at the time. After stating: "[W]e'll watch for the others tomorrow morning," the trial judge administered the oath to these witnesses and instructed them as follows: "You are all under the rule. Wait in the back." Defendant made no objection to the scope of the court's order. On the second day of trial, the state informed the court that some of those persons present in the courtroom were to be witnesses. The trial judge again instructed all witnesses in the case not to "enter the courtroom and hear the testimony of any other witness." As previously, he did not instruct them to refrain from discussing the facts of the case or the testimony of any witness with each other. Again, defendant did not object to this form of sequestration. Apparently, not all of the state's witnesses were present to hear the sequestration order but were taken upon their arrival at the courthouse to the room in which all witnesses were located to await their summons to testify; no witness entered the courtroom prior to testifying.
Mrs. Donna Wiggins was the seventeenth state witness to testify. She testified on the second day of trial. On cross-examination, defendant asked her if she had been told not to discuss the case with anyone. She replied that she had not been so instructed and that all of the witnesses had been waiting in one room to testify. Defendant moved for a mistrial on the ground that the witnesses were to have been placed under the rule of sequestration and should not have been allowed to discuss their testimony with anyone. The jury was removed from the courtroom. The trial judge asked Mrs. Wiggins if anyone had suggested to her what she should say in court or if she was testifying truthfully and to the best of her knowledge. She answered that no one had told her what to say. The trial judge also asked her if any other witnesses had told her how they intended to testify. She replied in the negative. Mrs. Wiggins also stated that none of the witnesses had told her about their testimony after having testified. The trial judge denied defendant's motion for a mistrial. The jury was returned to the courtroom. After the testimony of Mrs. Wiggins was completed, the state requested the court to place the remaining witnesses under the rule of sequestration. Thereupon, the witnesses were brought into the courtroom and asked by the trial judge if anyone had told them how to testify. None replied affirmatively. The trial judge then instructed the witnesses not to discuss the case among themselves. A subsequent witness denied speaking to witnesses after they testified.
The rule providing for sequestration of witnesses is contained in La.Code Crim.P. art. 764 which provides:
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
*1044 At the outset, we note that defendant's contention that no sequestration order was given by the trial judge is without merit. The record clearly reveals that, prior to the taking of any testimony, the trial judge placed the witnesses present under the rule of sequestration by ordering that they be excluded from the courtroom. On the second day of trial, upon the state's request, the trial judge again instructed all witnesses in the case not to enter the courtroom and hear the testimony of the other witnesses. Hence, the trial judge did issue a sequestration order. Moreover, no witness violated the order as given, i. e., no witness entered the courtroom and heard the testimony of any other witness.
Defendant's second contention that the witnesses were improperly allowed to discuss the case among themselves is equally without merit. La.Code Crim.P. art. 841 provides, and this court has consistently held, that an irregularity or error cannot be availed of after verdict unless it is objected to at the time of its occurrence. State v. Williams, 343 So.2d 1026 (La.1977); State v. Finley, 341 So.2d 381 (La.1976). On the first and second days of trial, the judge ordered that the witnesses be excluded from the courtroom. They were not instructed to refrain from discussing the facts of the case or the testimony of any witness with each other. Defendant did not object on either occasion to the scope of the sequestration order. Moreover, not until sixteen witnesses had testified did defendant on the second day of trial make known his complaint to the trial judge. At this point, the trial judge immediately instructed the remaining witnesses to refrain from discussion of the case among themselves. Clearly, defendant waived any objection to the form of the sequestration order, i. e., that it did not include an instruction to the witnesses to refrain from discussing the case among themselves. Hence, the trial judge correctly denied defendant's motion for a mistrial.
Assignment of Error No. 5 is without merit.

DECREE
For the reasons assigned, the convictions and sentence are affirmed.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 3 and 4. Therefore, we consider these assignments of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] La.R.S. 32:661(A) provides:

Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine or other bodily substance for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered.
[3] La.R.S. 32:661(B) provides:

Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by Subsection (A) of this section, and the test or tests may be administered subject to the provisions of R.S. 32:662.