WOODARD, Judge.
On July 2,1996, defendant, Kevin J. Amos, was charged by bill of information with vehicular homicide, in violation of La.R.S. 14:32.1, for the June 8, 1996 death of Donna M. Smith. Defendant filed a Motion to Suppress on August 16, 1996, which was denied August 26,1996, subsequent to a suppression hearing. On December 18, 1996, defendant pled guilty to vehicular homicide, reserving his right to appeal the correctness of the trial court’s ruling on his Motion to Suppress under State v. Crosby, 338 So.2d 584 (La.1976). The issue of the denial of the defendant’s Motion to Suppress is the only issue before this court. We affirm the trial court’s decision and remand to the trial court to amend the commitment and minute entry of the sentence to reflect credit for time served.
PACTS
While traveling on a rural highway in La-Salle Parish, Louisiana, defendant crossed the center lane and smashed into Donna M. Smith’s vehicle, the victim, in a near head-on collision. Upon impact, defendant was either thrown from his vehicle or 12crawled from it when it became engulfed in flames. The victim was trapped in her vehicle, necessitating the use of emergency services and extraction equipment to extricate her from her vehicle. The victim was transported to Rap-ides Regional Medical Center. Defendant was treated at LaSalle General Hospital and later Huey P. Long Hospital in Pineville, Louisiana, for less serious injuries.
Smith suffered multiple traumas, to the head, extremities, spine, and torso areas of her body. She eventually died in the hospital later that night.
At the time of the accident, Trooper R.A. Murphy investigated the scene. He saw the defendant there, who smelled of alcohol, and “Mirandized” him at the scene. Trooper Scott Franklin arrived at the scene after the defendant had been transported to the hospital. Trooper Murphy, then, dispatched him to the hospital to secure a blood sample from the defendant. After being transported to LaSalle General Hospital, Trooper S. Franklin questioned the defendant.
The defendant claimed that he could not remember what happened. Trooper S. Franklin, the defendant’s contemporary and acquaintance, told him he was not under arrest for DWI but that it was necessary for defendant to submit to a blood test. Franklin, likewise, smelled alcohol on defendant’s breath and noticed that his speech was slurred. The defendant was read his rights relative to implied consent from a standard form, stating that he was under arrest, law enforcement suspected him of operating a motor vehicle while intoxicated and the law now required him to submit to chemical testing. Trooper Glenn Franklin then presented the blood-alcohol kit to be utilized and, subsequent to the blood draw, sealed the evidence in the kit.
*777 At the suppression hearing, Trooper S. Fránldin testified that Amos would not have been free to leave if he had tried to leave the hospital prior to administration of the chemical tests. Likewise, Trooper Murphy stated Amos would not have been allowed to leave the scene without submission to some form of testing for detecting the presence of intoxicants had he not been transported to a hospital for medical treatment.
The test results of the defendant’s blood established his intoxication beyond the statutory limit. The week following the wreck, he was again arrested for driving while intoxicated, vehicular homicide, and driving left of the center line.
J3LAW
ERRORS Patent
In accordance with La.Code Crim. P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there are two errors patent.
This defendant did not receive a fine, although one is mandated by the penalty provision of La.R.S. 14:32.1. Thus, he received an illegally lenient sentence. The issue of an illegally lenient sentence has been previously addressed by this court in State v. Hines, 95-111 (La.App. 8 Cir. 10/4/95); 668 So.2d 199, 201, writ denied, 95-2686 (La.2/6/96); 667 So.2d 528, citing State v. Jackson, 452 So.2d 682 (La.1984), and resolved as follows:
[W]hen a defendant alone appeals and the record contains a patent error favorable to the defendant, the appellate court should ignore the error, unless the prosecution, having properly raised the issue in the trial court, has sought the appellate review.
The state has not complained of the lenient sentence; therefore, the court will not recognize it as an error patent.
Second, the record establishes that the district court did not give the defendant credit for time he spent in actual custody prior to the imposition of the sentence. Thus, this court remands this case for the trial court to amend the sentence to reflect that he be given credit for the time he served prior to the execution of the sentence. The trial court is ordered to amend the commitment and minute entry of the sentence to reflect such credit, in conformity with La. Code Crim.P. art. 880. See La.Code Crim. P.art. 882(A) and State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858.
The Motion to Suppress
Defendant’s sole assignment of error is the failure of the trial court to grant his Motion of Suppress the results of chemical tests allegedly conducted in violation of his rights. He claims that he was not arrested at the time of the blood withdrawal, thereby rendering the use of such evidence inadmissible for failure to comply with the procedures found in La.R.S. 32:661 et seq.
Recording to the Louisiana Implied Consent Law, a motorist, subsequent to arrest, agrees to submit to chemical analysis of his breath, blood, or urine. La.R.S. 32:661(A)(1). A defendant may refuse upon arrest, if consent is sought, except in cases where an arrestee is involved in a traffic fatality or accident where serious bodily injury occurs. La.R.S. 32:666(A). This case is such a situation.
Amos’s argument hinges on the determination of whether an arrest preceded the chemical testing performed at the direction of law enforcement. Put simply, he was not under arrest at the time his blood was drawn, he contends that his blood sample was inadmis-. sible for failure to comply with the procedures set forth in Title 32.
La.R.S. 32:666(A) states:
A. A person under arrest for a violation of R.S. 14:98 or any other law or ordinance that prohibits operating a vehicle while intoxicated may not refuse to submit to a chemical test in any case wherein a traffic fatality has occurred or a person has sustained serious bodily injury. The law enforcement officer shall direct that a chemical test be conducted in such circumstances. A physician, registered nurse, qualified technician, or chemist shall perform a chemical test in accordance with the provisions of R.S. 32:664 *778 when directed to do so by a law enforcement officer. In all other cases, a person under arrest for a violation of R.S. 14:98 or other law or ordinance that prohibits operating a vehicle while intoxicated may refuse to submit to such chemical test, after being advised of the consequences of such refusal as provided for in R.S. 32:661(0, subject to the following:
(1) His license shall be seized under the circumstances provided in R.S. 32:667.
(2) If he is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny the issuance of a license or permit to such person for a period of six months after the date of the alleged violation.
(3) Evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages or any abused or illegal controlled dangerous substance as set forth in R.S. 40:964. However, such evidence shall not be admissible in a civil action or proceeding other than to suspend, revoke, or cancel his driving privileges.
| .¡¡(Emphasis added.)
At the suppression hearing and in their briefs, the defendant and the state discussed this court’s holding in State v. Hebert, 559 So.2d 821 (La.App. 3 Cir.), writ denied, 563 So.2d 865 (La.1990). Hebert addressed a largely apposite factual situation. In Hebert, a death resulted from a car accident, the defendant was transported to the hospital, read his rights from a near identical form, and his blood was drawn. He was never formally placed under arrest, in the sense of an officer stating so on the day of the accident, although, subsequent to the test results, on a different day he was arrested. Nevertheless, this court considered objective criteria surrounding the blood draw and determined that an arrest had been effected. Moreover, this court held that an arrest had occurred when the officer read the defendant his Miranda rights, as the officer did in the instant case at the accident scene, and Hebert’s rights pertaining to chemical testing for intoxication found in the statement of the rights form, which declares in its first sentence that the suspect is under arrest. Furthermore, this court stated that an arrest occurred on the day of the accident “for the purpose of drawing his blood to determine the alcoholic content in connection with a DWI offense.” Mat 825.
In Hebert, an issue of credibility was resolved in favor of the officer, whose claim that he read the rights form was contradicted by the defendant. The officer instructed the defendant that he could not refuse the test because of the involvement of fatalities.
In the case sub judice, the facts mirror Hebert, with one exception. Here, Trooper S. Franklin testified that he told both Amos and his family members that he was not under arrest for DWI just prior to reading the form to him, stating he was under arrest and directing medical personnel to draw defendant’s blood. As in Hebert, however, Trooper S. Franklin read a form entitled “Rights Relating to Chemical Test for Intoxication.” The form stated:
You are under arrest by a law enforcement officer who has reasonable grounds to believe that you were operating a vehicle or watercraft while intoxicated. The law now will require you to take a chemical test or tests to determine the alcoholic content and/or the presence of any abused or illegal controlled dangerous substance in your blood, breath, urine or other bodily substances.
(Emphasis added).
| e,Thus, the state contends, as was contended in Hebert, that Amos was clearly apprised that he was under arrest. Nevertheless, because the instant case differs from Hebert in that Trooper S. Franklin testified in the case sub judice that he told the defendant he was not under arrest for DWI, and in Hebert, under the jurisprudence, an arrest had occurred, not simply by reading of the form, but because the objective facts supported an arrest, an analysis of the law of arrest is appropriate.
*779 La.Code Crim.P. art. 201 defines “arrest” as:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint pf the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
Further, Hebert explains:
In State v. Thibodeaux, 414 So.2d 366, 368 (La.1982) our Supreme Court stated: “[w]hether a person has been taken into custody, detained or deprived of his freedom in a significant way must be decided by an objective test. Neither the defendant’s subjective impression nor the formality of an official arrest will be determinative of the issue of his claimed illegal detention.” (Citations omitted.) See also State v. Sherer, 354 So.2d 1038 (La.1978). Rather, the proper inquiry is whether the person, in view of the circumstances, is prevented from exercising his liberty for more than a transitory moment. Once there is an extended restraint on one’s liberty, that person is under arrest. State v. Freeman, 503 So.2d 753 (La.App. 3rd Cir.1987).
Id. at 824.
Furthermore, State v. Allen, 95-1754 (La.9/5/96); 682 So.2d 713, 719, states:
In distinguishing between an investigatory stop and an arrest, courts have considered numerous factors. In Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the United States Supreme Court found a stop for questioning was indistinguishable from a traditional arrest because the suspect was not questioned briefly where he was but transported to the police station, was never informed he was free to go and, in fact, would have been restrained had he tried to leave. The United States Supreme Court in Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting INS v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); United States v. Mendenhall, 446. U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)) stated that ' “any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account all of the circumstances surrounding the incident in each [95-1754 La. 6] individual case.” The Mendenhall Court also stated 17that in determining whether a person has been seized under the Fourth Amendment, one must determine whether a reasonable person would have believed he was free to leave. Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877. This court has considered this issue and determined that “it is the circumstances indicating intent to effect an extended restraint on the liberty- of the accused, rather than the precise timing of an officer’s statements: “You are under arrest,’ that are determinative of when an arrest is actually made.” State v. Giovanni, 375 So.2d 1360, 1363 (La.1979) (quoting State v. Sherer, 354 So.2d 1038, 1042 (La.1978)); see also, State v. Davis, 558 So.2d 1379, 1382 (La.App.1990); State v. Simms, 571 So.2d 145, 148 (La.1990). In both Giovanni and Simms, this court found an arrest based on the fact that the defendant was not free to leave.
It is clear that the defendant’s liberty was constrained at the hospital by the immediate presence of the troopers. Objectively, there was more than enough probable cause for the troopers to arrest the defendant, given the accident, the smell of alcohol on his breath, and his slurred speech. Additionally, evidence reveals that they were determined that he was not free to go until his blood had been drawn. Even though this entire interlude with the defendant and the officers took place within five to. ten minutes, Hebert held this type of constraint is sufficient under the Fourth Amendment to constitute an arrest. State v. Hebert, 559 So.2d at 821.
Accordingly, we find that the trial court did not err in denying the defendant’s Motion to Suppress.
CONCLUSION
The defendant’s conviction is affirmed. The sentence is amended to reflect that he is given credit for time served. This matter is *780 remanded to the district court to amend the commitment and minute entry to reflect such credit.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.