JUDE G. GRAVOIS, Judge.
| ^Defendant, Elizabeth Ann Caccioppo, appeals her conviction for driving while intoxicated, fourth offense, in violation of LSA-R.S. 14:98(E). Defendant pled guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976), following the denial of her motion to suppress evidence. Defendant argues on appeal that her blood sample was inadmissible because she was not “under arrest” at the time the investigating officer and the assisting nurse made the “blood draw” on defendant. The State responds that the trial court did not err by denying the motion to suppress the evidence because defendant’s blood sample was properly obtained pursuant to LSA-R.S. 32:661(B). For the reasons that follow, we affirm defendant’s conviction and sentence.

FACTS AND PROCEDURAL BACKGROUND

At the hearing on defendant’s motion to suppress held on February 3, 2010, Officer John Cryer of the Kenner Police Department, Traffic Safety Unit, testified |3that at the time of said hearing, he had been employed by the Kenner Police Department for thirteen (13) years. He stated that he had taken several professional classes that pertained to recognizing and identifying people who are driving while intoxicated. Since 2002, he had made over 300 arrests for driving while intoxicated and drug-impaired driving. He further *63 testified that he was nationally accredited as a field sobriety instructor, and he was a breath field supervisor.
Officer Cryer further testified that on July 20, 2008, he noticed defendant’s vehicle stopped, in the middle of the street, blocking the right lane in the 900 block of West Esplanade in Kenner, Louisiana. When Officer Cryer initially saw defendant, she was seated in the vehicle’s driver’s seat, completely unresponsive. Defendant’s vehicle was running and in drive, her foot was resting on the brake, and the driver’s door to her vehicle was slightly ajar. Officer Cryer then opened the driver’s door, put the vehicle in park, and checked defendant’s vital signs. At that point, defendant’s breathing was shallow and her pulse was slow. There was a strong odor of alcohol within defendant’s vehicle. Officer Cryer called emergency medical services (“EMS”) to the scene, who attempted to rouse defendant from her stupor by using ammonium inhalants. When that effort gained no response from defendant, she was transported by EMS to the nearest hospital.
Officer Cryer testified that the smell of alcohol in the vehicle, defendant’s unconscious condition, and his finding of a water bottle in the center console of the vehicle that smelled highly of vodka led him to believe that defendant was intoxicated. Officer Cryer went to the hospital to ensure that defendant’s condition did not deteriorate anymore. He brought along a blood alcohol kit into the hospital, and while there, he and an assisting nurse conducted a “blood draw” on defendant to determine her blood alcoholic content, or her “BAC” level, which was |4Iater determined by testing to be in excess of .50g%, considerably over the legal limit.
Defendant never regained consciousness while Officer Cryer was present with her. Officer Cryer explained that if defendant had “woken up” at that point, he would have advised her of her Miranda[1] rights, then she would have been given a field sobriety test on the scene. Officer Cryer testified that he did not take defendant into custody because of her medical condition and because he did not believe he had “enough to arrest her at that point.” After Officer Cryer received the results of defendant’s blood alcohol test, he obtained an arrest warrant and ultimately arrested her.
The trial judge denied defendant’s motion to suppress the blood sample, finding that there was an arrest sufficient to allow introduction of the results of defendant’s blood alcohol test.

ANALYSIS

Trial courts are vested with great discretion in ruling on a motion to suppress, and, consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Knight, 09-359, p. 15 (La.App. 5 Cir. 2/9/10), 34 So.3d 307, 318, citing State v. Long, 03-2592 (La.9/9/04), 884 So.2d 1176, 1179, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005).
LSA-R.S. 32:661(A)(1) provides that a person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to chemical tests for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while |fithe person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages. (Emphasis added.) LSA-R.S. 32:661(B) *64 provides that any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by Subsection A of this section, and the test or tests may be administered subject to the provisions of R.S. 32:662.
In State v. Sherer, 354 So.2d 1038 (La.1978), the Louisiana Supreme Court held that the circumstances indicating the officer’s intent to effect an extended restraint on liberty of an accused, rather than the precise timing of an officer’s statement: “You are under arrest” are determinative of when an “arrest” is actually made within the meaning of R.S. 32:661. In Sherer, the state trooper arrived at the scene of the accident and found the defendant still in his truck in an unconscious state. The defendant’s breath smelled of alcohol, beer cans were found in the truck, and the truck had crossed the center line of the highway. Prior to the defendant’s removal from the scene in an ambulance, the state trooper told the ambulance driver that he was placing charges against the defendant based on the physical evidence indicating that the defendant had been driving while intoxicated. The state trooper instructed the ambulance driver to obtain a blood alcohol test on the defendant. The state trooper went to the hospital where the defendant had been taken for emergency medical care. Although the defendant was unconscious, the state trooper advised him of his rights and requested the defendant’s consent to the blood alcohol test. The state trooper received no response. Id., 354 So.2d at 1040.
On appeal, the defendant argued that the blood sample was illegally withdrawn because he was not under arrest at that time and had not consented to the test. The Supreme Court found that, under the circumstances, there was a clear intent on the part of the state trooper to effect a restraint on the defendant, to the | ^extent possible, at the scene of the accident, and, therefore, the defendant was “arrested.” The Supreme Court also noted that the defendant was unconscious and in need of medical care, and, therefore, it was not possible to physically detain the defendant without seriously jeopardizing his health. Moreover, the Supreme Court stated that there was no need to detain the defendant who was obviously incapable of escape. The Supreme Court further found that, because the defendant remained unconscious at the hospital, a condition rendering him incapable of refusal to submit to the blood alcohol test, the defendant’s implied consent was not withdrawn under LSA-R.S. 32:661(B), and the testing was permissible. State v. Sherer, 354 So.2d at 1041-42.
In United States v. Wright, 797 F.2d 245 (5th Cir.1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987), the U.S. Fifth Circuit cited Sherer, finding that blood alcohol test results taken from an unconscious suspect would most likely have been admissible at his DWI trial. In Wright, defendant Armstrong, a city attorney, and defendant Wright, an attorney in private practice, were convicted under the Hobbs Act of extorting money from a law firm and its clients in exchange for not prosecuting drunken drivers in city court. The district court found that Armstrong withdrew the warrant for Wright’s client Burns’s arrest because Wright agreed to pay a fee to Armstrong. On appeal, Armstrong argued that the evidence showed that he decided not to prosecute Burns because the blood alcohol test results showing Burns’s intoxication would not have been admissible at Burns’s DWI trial, because Burns had not been arrested at the time of the test.
*65 Citing Sherer, the U.S. Fifth Circuit found that Burns was under arrest within the meaning of LSA-R.S. 32:661 when the blood test was taken at the hospital, and that under LSA-R.S. 32:661(B), Burns’s implied consent was not withdrawn and the testing was permissible.
17The instant case is similar to Sherer. As in Sherer, defendant in the instant case was found unconscious in her vehicle. In both cases, the officer found other physical evidence that the respective defendants had been driving while intoxicated. In both cases, the officers went to the hospitals where the respective defendants had been taken for emergency care and either took blood themselves or directed that it be done. In both cases, the defendants remained unconscious at the hospital.
Furthermore, the totality of the circumstances in the present case clearly indicates the intent of Officer Cryer to effect extended restraint on the liberty of defendant. It is obvious that if defendant would have regained consciousness at any time while in Officer Cryer’s presence, she would not have been “free to go.” According to Officer Cryer’s testimony, if defendant had regained consciousness while in his presence, he would have advised her of her Miranda rights and would have given her a field sobriety test.
Looking at the totality of the circumstances involved in the instant case, viewed objectively, we find that defendant was effectively placed “under arrest” by Officer Cryer at the hospital. Officer Cryer testified that he would have advised defendant of her Miranda rights and would have given her a field sobriety test had she regained consciousness in his presence. Neither of these courses of action by Officer Cryer were possible because of defendant’s continued state of unconsciousness. Also, it is evident that Officer Cryer followed the ambulance to the hospital to assure that defendant would not be free to leave if and when she regained consciousness. This is confirmed by the fact that Officer Cryer brought a blood test kit into the hospital and assisted the nurse in the “blood draw” on defendant. In actuality, even though unconscious, defendant was effectively under Officer Cryer’s restraint at the hospital.
|RAt the same time, Officer Cryer’s statement regarding not having enough “to arrest her [defendant] at that point” cannot be completely ignored. However, this statement must be carefully considered both in the context of the entirety of Officer Cryer’s testimony, and, importantly, in his actions. This statement was made in response to a compound question: “So, when you said that she wasn’t in custody, was that because you didn’t believe that you had enough to arrest her at that point or because of her medical condition?” Officer Cryer’s response was, “Both.” Prior to this statement, Officer Cryer stated that had defendant not been unconscious, “[s]he would have been Mirandized, then she would have been given the field sobriety test on scene. Depending on her performance at that point in time, it would have been determined if she would be arrested and transferred to the Kenner City Jail.” It is not clear from Officer Cryer’s testimony as to what point in time he felt he did not have enough evidence to arrest defendant.
Looking at the totality of the facts and circumstances involved in this case, viewed objectively, we find that defendant was “under arrest” within the meaning of LSA-R.S. 32:661 when the “blood draw” was taken at the hospital. We also find, as did the courts in Sherer and Wright, that under LSA-R.S. 32:661(B), defendant’s implied consent was not withdrawn, and the *66 testing of her blood alcohol level was permissible.
Defendant cites State v. Shirley, 08-2106 (La.5/5/09), 10 So.3d 224, and State v. Amos, 97-1283 (La.App. 3 Cir. 4/29/98), 714 So.2d 775, writ denied, 98-1451 (La.10/9/98), 726 So.2d 27, in support of her position that the blood sample was inadmissible because she was not under arrest at the time the blood test was conducted. However, those cases are distinguishable from the instant one, and, therefore, are inapplicable. In the instant case, the defendant was unconscious at the scene and at the hospital, and, therefore, she could not have been advised of her | ^rights and formally arrested, unlike the defendant in Amos who was conscious, advised of his rights at the scene, and spoke to the officer at the hospital, and unlike the defendant in Shirley, who was also conscious at the scene. Also, unlike the instant case, and unlike Sherer and Wright, Shirley and Amos did not involve the applicability of LSA-R.S. 32:661(B), which pertains to persons who are dead, unconscious, or otherwise in a condition rendering them incapable of refusal to consent to blood tests to determine blood alcohol levels.
For the above reasons, this assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
A review of the record indicates that the trial judge imposed an illegally lenient sentence on defendant when he failed to order that 60 days of the sentence be served without benefit of parole, probation, or suspension of sentence as was required under the version of LSA-R.S. 14:98(E) in effect at the time of the offense in July of 2008.[2] The trial judge also imposed an illegally lenient sentence when he failed to impose the mandatory fine of $5,000.00 under LSA-R.S. 14:98(E). Neither the State nor defendant raised this issue in the trial court or on appeal.
Under LSA-C.Cr.P. art. 882, this Court has the authority to correct an illegal sentence despite the failure of either party to raise the issue. This authority is permissive rather than mandatory. State v. Quinones, 03-907, p. 11 (La.App. 5 Cir. 12/30/03), 864 So.2d 824, 830. However, “[a]n appellate court should refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint and which resulted in dispositions of the cases favorable to the defendant.” State v. Campbell, 01-0329 (La.11/2/01), 799 So.2d 1136, 1136. Given the particular circumstances of this case, we decline to exercise our authority in this regard.

CONCLUSION

For the above reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. This statute was amended by the Louisiana Legislature in 2010; however, those amendments do not change the analysis herein.
LSA-R.S. 15:301.1 states that the failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence. Thus, no corrective action is necessary.