721 So.2d 511 (1998)
STATE of Louisiana, Appellee,
v.
Monty Lee PRICE, Appellant.
No. 31368-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*512 Indigent Defender Board by John M. Lawrence, Shreveport, for Appellant.
*513 Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Michael A. Pitman, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and BROWN and PEATROSS, JJ.
PEATROSS, J.
Defendant, Monty Lee Price, pled guilty to one count of vehicular homicide (a violation of LSA-R.S. 14:32.1), two counts of first degree vehicular negligent injury (violations of LSA-R.S. 14:39.2) and one count of vehicular negligent injury (a violation of LSA-R.S. 14:39.1). The trial court sentenced Defendant to serve 15 years of imprisonment at hard labor, 1 year without benefit of probation, parole or suspension of sentence, and fined him $2,000 for the vehicular homicide count; 5 years at hard labor for each of the first degree vehicular negligent injury counts; and 6 months for the vehicular negligent injuryall to be served concurrently. The trial court denied a timely filed motion to reconsider sentence. Defendant now appeals, urging that his 15year sentence for the vehicular homicide count is excessive. For the following reasons, we affirm the conviction and sentence.

FACTS
In the early morning hours of February 19, 1997, Defendant and his friends Roy Deal and Clifton Roberts patronized the Centerfold Lounge in Bossier City. Defendant consumed alcoholic beverages and became intoxicated. Just after 2:00 a.m., the three men left the bar to return to Shreveport, with Defendant driving his white Honda Prelude.
Although his friends urged him to slow down, Defendant increased the speed of his vehicle. As Price drove down East Texas Street, he passed two Bossier City Police officers investigating a burglary alarm. The officers estimated that the Honda was going approximately 80 m.p.h. in the 35 m.p.h. zone. The officers got into their car to pursue Defendant but lost sight of his vehicle. As the officers rounded on curve in East Texas Street, they came upon the aftermath of an automobile accident involving Defendant.
Defendant had failed to negotiate a curve in the 400 block of East Texas Street and his vehicle veered into the oncoming lane of traffic where it struck a Chevrolet Caprice almost head-on. Seventy-four-year-old Thelma Johnson was driving the Caprice, and her sister, seventy-year-old Neoma Calvet, sat in the passenger seat. The collision inflicted severe and painful injuries on both women in the Caprice. Mrs. Calvet suffered severe closed-chest and closed-head injuries which caused her death after she was transported to the hospital. Mrs. Johnson was not killed, but her injuries were extraordinary. The force of the crash drove the steering wheel into Mrs. Johnson's chest, causing her to suffer a nearly fatal aortic aneurysm. The crash also drove Mrs. Johnson's foot through the floorboard of her car causing irreparable crushing injuries, and her scalp was nearly torn from her head.
As a result of these injuries, Johnson was rendered comatose and was hospitalized on life-support equipment for over two months after the accident. Johnson, who was active prior to the accident, is now confined to a wheelchair, has greatly reduced vocal capacity due either to the accident or to complications from life-support treatment, requires constant primary care and must take medicine in quantities sufficient to cause her to suffer persistent skin problems.
Police reports indicate that Defendant suffered two broken legs as well as head and other internal injuries. Deal suffered a broken back. Roberts was not seriously injured. Officers determined that Defendant's bloodalcohol level was 0.14 grams/percent. Subsequent investigation revealed that Defendant had a prior conviction for DWI (where his blood-alcohol level was 0.159 grams/percent) for which he was on probation at the time of this accident.
After Defendant pled guilty to the charges discussed above, the court received numerous letters from the family of Calvet and Johnson and from friends and family of Defendant. Probation officers from the Department of Public Safety prepared a PSI which thoroughly examined the impact of the loss on the victims' family. The trial judge conducted a sentencing hearing where he *514 heard testimony from Mrs. Johnson, her family members and friends and acquaintances of Defendant. The trial court then imposed the sentence discussed above. Defendant orally objected to the sentence as excessive and subsequently filed a timely written motion to reconsider sentence, urging that the court placed excessive weight on the victim impact testimony in considering the sentence. The motion was denied and Defendant now appeals, urging that his sentence for vehicular homicide is excessive.

DISCUSSION
LSA-R.S. 14:32.1, Vehicular Homicide, provides, in pertinent part:
B. Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than two years nor more than fifteen years. At least one year of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a court-approved substance abuse program or a court-approved driver improvement program, or both.
Defendant was sentenced to the maximum term of imprisonment for this offense; however, the trial court imposed only the minimum term without benefit of probation, parole or suspension of sentence. The court also imposed the minimum fine and did not require Defendant to participate in either a substance abuse program or a driver improvement program. The absence of the latter requirement makes the sentence illegally lenient; however, because the State did not timely raise a complaint, this court should not correct the error which is favorable to Defendant. See, e.g., State v. Jackson, 452 So.2d 682, 684 (La.1984) cited in State v. Amos, 97-1283 (La.App. 3rd Cir.4/29/98), 714 So.2d 775.
In support of his argument that his sentence is excessive, Defendant cites a number of cases in which, he urges, similarly situated defendants received more lenient sentences. The State counters by arguing that the cited examples are either factually and/or legally inapposite and that Defendant's sentence is justified in light of the harm that his conduct caused.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Second, the reviewing court must determine whether the sentence is constitutionally excessive. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra; State v. Davis, 28,662 (La. App.2d Cir.9/25/96), 680 So.2d 1296.
There is no requirement that specific matters be given any particular weight. State v. Callahan, 29,351 (La. App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. *515 Nor is there any proportionality guarantee in non-capital cases unless the reviewing court finds the sentence is grossly disproportionate to the circumstances of the offense. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); State v. Delaughter, 29,974 (La.App.2d Cir.12/10/97), 703 So.2d 1364; State v. Callahan, supra, fn. 2.
The Harmelin rule strikes at the heart of Defendant's complaint. He presents no compelling argument that the 15-year sentence, only 1 year of which is non-parolable, is a grossly disproportionate punishment for this offense. The task of the sentencing court is to particularize the sentence to the offender and the crime, and the unique facts of this case do not lend themselves well to comparison.
Insofar as similar cases are instructive, they suggest that the 15-year sentence is not excessive. In State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied,___ U.S. ___, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996), the supreme court reversed the decision of the third circuit holding that a nine-year sentence was excessive for a defendant who struck a bicyclist and then left him to die by drowning in a muddy ditch. The court held that the only appropriate question on review was "whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate" (Id., at 959) and recognized that the harsh penalties for vehicular homicide were a legislative response to "the increasingly burdensome societal costs of drunken driving." Id.
Compare also State v. Gibson, 97-108 (La. App. 3rd Cir.4/30/97), 693 So.2d 286, approving a 9-year sentence for a defendant who drove drunk after having been warned not to, and State v. Trahan, 93-1116 (La.App. 1st Cir.5/20/94), 637 So.2d 694, which approved three concurrent 10-year terms for a defendant convicted of three counts of vehicular homicide arising from one incident. See also State v. Ruiz, 94-0541 (La.App. 4th Cir.12/15/94), 647 So.2d 1317, where the fourth circuit approved a 15-year sentence imposed on a second felony offender and State v. Guillory, 93-1031 (La.App. 3rd Cir.04/27/94), 640 So.2d 427, writ denied, 94-1380 (La.09/30/94), 642 So.2d 869, approving a 15-year sentence for a second felony offender who killed three persons and severely injured a fourth.
Particularly telling in this case is the fact that Defendant was on probation for his prior DWI offense when he committed these crimes. Rather than using probation as an opportunity to refrain from drinking and driving, Defendant not only continued this prohibited conduct, but did so egregiously, speeding on a public street despite the warnings from his friends. The officers estimated Defendant's speed as more than twice the posted limit.
Further, the victim impact evidence in this case was dramatic. Mrs. Calvet's family explained the overwhelming magnitude of their loss due to her death. The loss was especially hard on her grandchildren, many for whom she was the caretaker. Moreover, Mrs. Johnson's injuries transformed her previously active, vital life into that of an invalid with constant severe pain. She testified that she sleeps "under oxygen" every night and has to have someone with her day and night. She also stated at trial:
I don't know how much further I'll go. I pray every day that the Lord will take me because my kids can't take care of me no longer. The money has run out and every night I pray that He'll come. Sometime I feel like I can feel Him, He's there, but He won't take me. I want to go.
Those members of Mrs. Johnson's family who formerly relied on her for support are now called on instead, at great personal and monetary cost, to provide her constantly with primary and medical care.
Most importantly, the trial court's sentence was designed not only to punish Defendant for the harm that he caused, but also to provide Defendant with the opportunity to reform himself by contemplation and by action. In the words of the trial court:
In your favor let me say this. You are a young offender. You have been in trouble before with a previous DWI but you don't have a criminal record of being a burglar or an armed robber or something like this. You're a clean-cut young man. I would *516 suspect thatthat once you serve the time in the penitentiary that I'm going to sentence you to you probably shan't be in trouble again. I would say this to you. I'm going to give you a sufficient time in prison that you will think long and hard about what occurred here, but your life is not at a loss. You've caused these people a lot of pain, a lot of suffering and a lot of damage and will continue to do so. But your life, and this is strictly up to you, your life can reflect something positive because you can devote the time that you're in the penitentiary, and when you get out of the penitentiary, you can devote your time to people that are involved in AA, Alcoholics Anonymous, or people that are driving while drinking. There are a lot of programs that you can participate in. You can give talks, you can give lectures. You can talk to people in the penitentiary, which is where you're going. You can talk to them about this and have a positive impact on the world. And that's what I hope you do, sir.
Those comments are reflective of the overall care that the trial court gave to particularizing the sentence for Defendant. The fair measure of punishment justified for the devastating losses that Defendant created was tempered with the mercy of imposing only the mandatory minimum single year without benefits and by imposing all of the sentences concurrently. The decision of the court balancing punishment with pleas for forgivenesswas clearly not an easy one, and whatever more appropriate sentence might have been imposed, we cannot say that the trial court abused its wide discretion in fashioning this sentence.

CONCLUSION
For these reasons, we affirm Defendant's conviction and sentence.
AFFIRMED.