WILLIAMS, J.
 

 | ,The defendant, Earton Lynn Smith, was charged by bill of information with aggravated burglary of an inhabited dwelling and possession of a firearm by a convicted felon, violations of LSA-R.S. 14:60 and LSA-R.S. 14:95.1. Following a jury trial, the defendant was convicted as charged. He was sentenced to serve 30 years in prison at hard labor for the aggravated burglary conviction and five years at hard labor for the possession of a firearm conviction; the sentences were ordered to be served concurrently. For the reasons set forth herein, we affirm the defendant’s convictions and the sentence imposed for aggravated burglary. However, we vacate the defendant’s sentence for possession of a firearm by a convicted felon and remand this matter to the trial court for resentenc-ing.
 

 FACTS
 

 The defendant and Carisa Coleman began a romantic relationship in October 2005. Ms. Coleman testified that the relationship ended in April 2006 because the defendant was “very jealous and demanding.” In July 2006, Ms. Coleman moved from her residence in Shreveport, Louisiana to her brother’s home on Edwards Street in Bossier City; she did not advise the defendant of her new address.
 

 Ms. Coleman testified that on the evening of July 29, 2006, she was at her Edwards Street home when she heard a knock at the door. As she unlocked the door, the defendant pushed his way inside. Ms. Coleman stated that once the defendant gained entry, he grabbed her by her neck, pushed her into a bedroom, pushed her onto the bed and began slapping her and calling her a “bitch.” Ms. Coleman testified that the defendant told her 12that “if he can’t have me, can’t nobody have
 
 *857
 
 me.” Ms. Coleman’s face was seriously bruised in the attack.
 

 Hearing the commotion, Ms. Coleman’s sister-in-law, Tamekia Kennedy, entered the room and ordered the defendant to leave. The defendant pulled a silver and black handgun from his shirt, held it to Ms. Coleman’s head and threatened to kill her. Ms. Kennedy ran from the room and called the Bossier City Police Department (“BCPD”).
 

 Police officers responded quickly, and when the defendant heard the police sirens, he forced Ms. Coleman into the kitchen and then released her. Ms. Coleman ran out of the front of the house as the defendant ran out of the back door.
 

 Officer John Morton of the BCPD was the first officer to arrive at the scene. Officer Morton testified that he spoke briefly to Ms. Coleman, who informed him that the defendant had run out of the back door and was armed with a handgun. Officer Morton stated that he ran to the back of the house and saw the defendant running through the back yard. He testified that he saw the butt of a handgun in the defendant’s hand, so he drew his own weapon, identified himself as a police officer and ordered the defendant to stop. The defendant kept running but turned and looked over his shoulder at the officer. Officer Morton testified that the defendant did not aim the gun in his direction; rather, the defendant leaped over a chain link fence and was not apprehended that night. Officer Morton testified that he clearly saw the suspect’s face and identified the defendant as the suspect in open court.
 

 |sThe defendant was arrested at a later date.
 
 [1]
 
 It was later discovered that the defendant was a convicted felon with a prior conviction for, among other things, armed robbery. Consequently, the defendant was charged with aggravated burglary and possession of a firearm by a convicted felon.
 

 The trial commenced on November 26, 2007. The trial began with the defendant acting as his own counsel during the beginning of
 
 voir dire.
 
 Before allowing the defendant to proceed, the court engaged the defendant in a lengthy dialogue with regard to the dangers of self-representation. The court appointed an attorney to assist the defendant and explained to the defendant the
 
 voir dire
 
 process in detail. After conducting a portion of
 
 voir dire
 
 himself, the defendant asked that his attorney complete the jury selection process. The court informed the defendant that he could either be represented by counsel or he could represent himself. The defendant initially opted to continue to represent himself. However, as jury selection continued, the defendant chose to allow his appointed attorney to represent him for the remainder of the trial.
 

 At the conclusion of the trial, the defendant was convicted as charged. The trial court denied the defendant’s pro se motion for a new trial. After reviewing a presen-tence investigation report, the court sentenced the defendant to serve 30 years in prison at hard labor for the aggravated burglary conviction and five years at hard labor for the possession of a firearm conviction. The sentences were ordered to be served concurrently. This appeal followed.
 

 ^DISCUSSION
 

 Double Jeopardy
 

 The defendant contends his convictions for both aggravated burglary and possession of a firearm by a convicted felon constitute double jeopardy. He ar
 
 *858
 
 gues that he was charged with aggravated burglary because he entered the home with a firearm, yet the possession of the firearm also formed the basis for the felon with a firearm conviction.
 
 [2]
 

 The Fifth Amendment to the United States Constitution contains the double jeopardy clause, which provides that no person shall be “subject for the same offenses to be twice put into jeopardy of life or limb.”
 
 State v. Brown,
 
 42,188 (La.App. 2d Cir.9/26/07), 966 So.2d 727,
 
 writ denied,
 
 2007-2199 (La.4/18/08), 978 So.2d 347;
 
 State v. Price,
 
 39,582 (La.App. 2d Cir.3/23/05), 899 So.2d 633;
 
 State v. Jacobs,
 
 493 So.2d 766 (La.App. 2d Cir.1986). The double jeopardy clause was made applicable to the states through the Fourteenth Amendment, and Article 1, Section 15 of the 1974 Louisiana Constitution contains a similar guarantee.
 
 Id.
 
 The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after |sacquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense.
 
 State v. Crandell,
 
 2005-1060 (La.3/10/06), 924 So.2d 122;
 
 State v. Jefferson,
 
 40,439 (La.App. 2d Cir.1/27/06), 920 So.2d 984.
 

 In the instant case, the defendant argues that he has been subjected to multi-pie punishments for the same course of conduct. Therefore, the analysis begins with determining whether a single offense or multiple offenses were involved.
 
 State v. Brown, supra; State v. Price, supra.
 

 An accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the prohibition against double jeopardy.
 
 State v. Nichols,
 
 337 So.2d 1074 (La.1976);
 
 State v. Blackson,
 
 38,044 (La.App. 2d Cir.1/28/04), 865 So.2d 272. To determine whether two offenses are the same for purposes of double jeopardy analysis, Louisiana employs both the
 
 “Blockburger
 
 test” and the “same evidence test.”
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980);
 
 State v. Brown, supra; State v. Price, supra.
 
 The
 
 “Blockburger
 
 test,” established by the United States Supreme Court in
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), states that two offenses are not the same for purposes of double jeopardy if “each crime requires proof of an additional fact which the other does not.”
 
 State v. Barakat,
 
 38,419 (La.App. 2d Cir.6/23/04), 877 So.2d 223;
 
 State v. Blackson,
 
 38,044 (La.App. 2d Cir.1/28/04), 865 So.2d 272. The “same evidence test” is a much broader test for purposes of double jeopardy:
 

 | (¡If the evidence required to support a finding of guilt of one crime would also
 
 *859
 
 have supported the conviction of another, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
 

 ⅝ ⅜ ⅜
 

 The “same evidence test” is somewhat broader in concept than
 
 Bloekburger,
 
 the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
 

 State v. Price,
 
 899 So.2d at 635, quoting
 
 State v. Knowles, supra
 
 (internal citations omitted).
 

 Aggravated burglary is the unauthorized entering of any inhabited dwelling ... with the intent to commit a felony or any theft therein, if the offender either (1) is armed with a dangerous weapon; or (2) after entering arms himself with a dangerous weapon; or (3) commits a battery upon any person while in such place, or in entering or leaving such place. LSA-R.S. 14:60. LSA-R.S. 14:95.1 provides in pertinent part: “It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony ... to possess a firearm or carry a concealed weapon.” Thus, to prove the crime of possession of a weapon by a convicted felon pursuant to LSA-R.S. 14:95.1, the state must prove that the defendant: (1) was convicted of a crime of violence as defined by LSA-R.S. 14:2(B) which is a felony, and (2) possessed a firearm or carried a concealed weapon.
 

 Applying the
 
 Bloekburger
 
 test to the two offenses herein, we find that they are two separate and distinct offenses. The offense of aggravated |7burglary requires,
 
 inter alia,
 
 proof that the offender entered an inhabited dwelling without authorization and with the intent to commit a felony therein, and either is armed with a dangerous weapon, arms himself with a dangerous weapon after entering, or commits a battery upon a person while inside or while entering or leaving. The offense of possession of a firearm by a convicted felon requires proof that
 
 inter alia,
 
 the offender was in possession of a firearm and has a qualifying prior felony conviction. Because each of these offenses requires proof of an additional element not required of the other, the offenses of aggravated burglary and possession of a firearm by a convicted felon are two separate offenses under the
 
 Bloekburger
 
 test.
 

 Also, these are two separate offenses under the “same evidence test” because the evidence necessary to prove the offense of aggravated burglary would not have been sufficient to convict defendant of possession of a firearm by a convicted felon. To obtain a conviction for possession of a firearm by a convicted felon, the state was required to present evidence that the defendant was in possession of a firearm, as well as evidence that he had been convicted of a violent felony. The evidence necessary to prove the offense of possession of a firearm by a convicted felon would not have been sufficient to support a conviction for aggravated burglary, as the state was required to show that the defendant was armed and intended to commit a felony when he forced his way into the victim’s home. Thus, LSA-R.S. 14:60 proscribes behavior above and beyond that of possession of a firearm by a convicted felon as defined by LSA-R.S. 14:95.1. Accordingly, because |8these are two separate offenses, there was no double jeopardy violation in convicting defendant of aggravated burglary and possession of a firearm by a convicted felon. This assignment of error is without merit.
 

 Motion for Mistrial
 

 The defendant also contends the trial court erred in denying his motion for
 
 *860
 
 mistrial after the incident in which the bailiff forcibly restrained him. The defendant concedes that a reasoned and ordered reaction by the court to the defendant’s own misconduct cannot support a motion for a mistrial.
 
 State v. Wiggins,
 
 337 So.2d 1172 (La.1976);
 
 State v. Tyler,
 
 607 So.2d 910 (La.App. 2d Cir.1992),
 
 writ denied,
 
 612 So.2d 97 (La.1993). However, the defendant maintains that the reaction by the bailiff to the conduct was excessive under the circumstances and thus prejudiced him in the minds of the jurors.
 

 The record shows that the defendant persistently engaged in disruptive behavior during the trial. The defendant often attempted to argue with his attorney, and his interruptions and arguments included profanity: “No, man, no, no. Look, man, you fucking my case up, man.... You’re fucking my case up, man. I ain’t fixing to spend no rest of my life in jail.... Put the son-of-a-bitch (a letter from Ms. Coleman) in (evidence).” The record also reflects that the defendant was visibly crying during some of the testimony and at several other points during the proceedings.
 

 The trial court cautioned the defendant about his behavior on more than one occasion and repeatedly warned him. The defendant continued to disrupt the proceedings, and early in the trial, the court had him briefly | aremoved from the courtroom early. Later, the prosecutor informed the court that the defendant had apparently been trying to make contact with the jury, an allegation which the defendant denied, and the trial court warned the defendant to be quiet and not to talk to the jury.
 

 The defendant’s misbehavior continued when he took the witness stand. The record reflects that as the defendant moved to the witness stand, one of the bailiffs told the defendant “Don’t be eyeballing that jury. You hear me?” After the conclusion of his direct testimony, the defendant became recalcitrant and refused to leave the witness stand:
 

 Deputy: Come on.
 

 Defendant: Man, I can’t.
 

 * * *
 

 Defendant: You get those letters right there. (Defendant throwing letters at the jury.) Please, y’all. Please, y’all. Here you go. Please, read the letters. Please, somebody—
 

 Deputy: I told you.
 

 Defendant: (Unintelligible).
 

 (DEPUTIES [RESTRAINING] DEFENDANT IN COURTROOM)
 

 Deputy: Get back.
 

 Defendant: Y’all, that’s her address. That’s her address. That’s her address. (Unintelligible). They don’t want y’all to see that. Help me, please, y’all. They don’t want y’all to see that. (Unintelligible). Please, (unintelligible). Please, don’t hurt me. Please.
 

 (DEFENDANT REMOVED FROM COURTROOM)
 

 |inAt that point, defense counsel moved for a mistrial. The trial court spoke with the bailiff and instructed the jury to disregard the disturbance. After the jury was removed from the courtroom, the court explained for the record:
 

 Court: The jury is out. The defendant is out. Let me put on the record that, with the jury out, that the defendant would not get out of the witness chair and then resisted the officer and there was a take down in the courtroom. And that’s what’s not on the verbal record.
 

 Prosecutor: Your Honor, I would also add for the record that he threw some sort of documents at the jury.
 

 
 *861
 
 Court: Threw some kind of document at the jury, so I told the jury to disregard it.
 

 When the trial recommenced the next day, the court heard the defendant’s motion for a mistrial. Defense counsel argued that the trial was a prejudicial environment for the defendant, citing the defendant’s comments and the incident in which the deputies had to restrain the defendant. The trial court indicated that it did not observe the incident, but it called as a witness the deputy who restrained the defendant during the episode. The deputy stated:
 

 Well, I was there and he was here sitting in the witness stand and y’all had, he had finished with him, the Judge had finished with him. I think y’all were going over for a sidebar or something and the Judge had his back to him. I walked up to him when he started this whining and crying, he was going to do that. I said, “Let’s go,” and he didn’t respond and I said, “Let’s go,” he didn’t respond, and so I grabbed him and helped him get up. That’s when he got up from in here. We got around to there and he threw something over around me to the jury. At that particular time I didn’t know what it was and I took him to the floor and the officers came in and we |ntook him back out there, and I came back into the courtroom.
 

 The deputy further stated:
 

 I looked at his body language. I watched his body language ever since we’ve had this thing going on. He’s been aggravated, irritated, so on and so forth throughout this trial. He was the same way here and that was the reason that I was cautious and really watching him when he did. Most people get up and go on back when they’re relieved. He didn’t do that. So I figured we was fixing to have a problem.
 

 At the court’s direction, the deputy explained for the record that the juror nearest the witness stand was within three or four feet of the stand, and that he was only two feet away when the defendant was moving around the stand. The deputy stated that he was concentrating on controlling the defendant when he forced the defendant to the floor. Another deputy testified that the papers the defendant threw landed in the jury box and one of the jurors retrieved the documents and gave them to the deputy. After hearing arguments, the trial court overruled the defendant’s motion for a mistrial. Defense counsel objected to the court’s ruling.
 
 [3]
 

 The trial continued with the defendant undergoing cross-examination while seated at the defense counsel table. The trial court further required two bailiffs to remain near the defendant at all times. During cross-examination, the defendant attempted to engage in argument with the 112prosecutor and was resistant to providing direct answers to many questions. At the conclusion of his testimony, the defendant had another outburst directed toward the jury, repeating that the police “set this up.” Once again, the court ordered that the defendant be removed from the court
 
 *862
 
 room. The defendant was later returned to the courtroom for further testimony but continued to be disruptive. During the rebuttal case, the prosecutor called Ms. Coleman to the stand, and the defendant became uncontrollable; he repeatedly told Ms. Coleman that he loved her and pleaded with her, “Don’t do this.” The court ordered the defendant to be quiet, saying “I don’t want to take you out.” However, the defendant again refused to comply with the court’s direction. The court stated:
 

 Okay, let me just stop the proceedings. The defendant continues to interrupt the proceedings so that the jury is unable to hear the witness. I’m going to direct the guards to take Mr. Smith, the defendant, to the conference room where he can hear the proceedings but where his voice will not interrupt and disturb the proceedings, and that’s the reason that I have repeatedly warned him that he’s got to be quiet.... (To the deputies: Don’t hurt him, but make sure he can hear the proceedings, please).
 

 (DEFENDANT REMOVED FROM THE COURTROOM).
 

 The testimony concluded without the defendant being present in the courtroom. The defendant was returned to the courtroom for the closing arguments, the jury charge and the reading of the verdicts.
 

 The issue concerning the motion for mistrial is governed by LSA-C.Cr.P. art. 775, which provides, in pertinent part:
 

 * * *
 

 | lsUpon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.[
 
 4
 
 ]
 

 
 *863
 
 | [4The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.
 
 State v. Price,
 
 40,408 (La.App. 2d Cir.12/16/05), 917 So.2d 1201, writ
 
 denied,
 
 2006-0156 (La.6/16/06), 929 So.2d 1284.
 

 In
 
 State v. Shank,
 
 448 So.2d. 654 (La. 1984), the defendant engaged in disruptive conduct during most of his trial. During voir dire, the defendant asked to go to the bathroom, and while in the hallway, in the presence of prospective jurors, shouted that he was guilty. At one point during voir dire, the defendant held up a sign which read, “I am guilty. I cut head off.” During the trial, the defendant stood up and threatened to escape and kill the members of the jury if he received a life sentence. The defendant also pounded on the defense table in a stabbing motion. When defense counsel was questioning a witness, the defendant jumped across the table and struck counsel, knocked him to the ground and began strangling him. The court upheld the defendant’s conviction, stating:
 

 Now defense counsel argues that his client’s conviction and sentence should be set aside because of the prejudicial impact on the jury caused by his client’s own conduct. It is obvious that to afford a defendant such relief, based on his own conduct, is to give him a tool by which he can effectively prevent forever a final determination of his guilt. Such a result cannot be tolerated if our system of justice is to survive.
 

 |
 
 mId.
 
 at 657. See also,
 
 State v. Jeffers,
 
 623 So.2d 882 (La.App. 2d Cir.1993).
 

 In the instant case, the record is complete in its description of the incident in which the defendant had to be restrained in the presence of the jury. The trial court made a full and complete inquiry into the incident for the record, heard testimony from the bailiff and explained for the record the layout of the courtroom where the incident occurred. The deputy explained his actions and the court apparently concluded that the deputy’s actions were necessary in order to control the defendant who was very near to the jury when he became obstreperous.
 

 After reviewing the record, we find that the trial court did not err in denying the defendant’s motion for a mistrial based on the potential prejudicial impact caused by the defendant’s own disruptive behavior. As the court stated in
 
 State v. Shank, supra,
 
 “to afford a defendant such relief, based on his own conduct, is to give him a tool by which he can effectively prevent forever a final determination of his guilt.” This assignment of error is without merit.
 

 Pro Se Assignments of Error
 

 The defendant filed a pro se brief in which he contends the trial court erred in denying his motion for new trial and in refusing to allow him to introduce letters from the victim and his cell phone bills into evidence. The defendant argues that the letters and cell phone bills would have provided evidence necessary to impeach the testimony of Ms. Coleman. The defendant also argues that the trial court should not have allowed him to represent himself and that he was prejudiced by being unable to introduce |lfithe letter and cell phone bill evidence due to its late production.
 
 [5]
 

 
 *864
 
 The record reveals that following jury selection, the court considered a motion
 
 in limine
 
 filed by the state with regard to a series of letters written by Ms. Coleman to the defendant while the defendant was in jail awaiting trial. The defendant intended to introduce the letters into evidence and urged that the letters contained prior inconsistent statements by Ms. Coleman. In the letters, Ms. Coleman repeatedly professed her continued love for the defendant but also expressed anger toward him because of this incident. The state argued that the defense had not timely supplied the letters in discovery. The judge deferred ruling until the trial, and ultimately, the jury heard about the letters in detail.
 

 There is no indication in the record to show why all of the letters and cell phone bills were not supplied by the defendant to the state in a timely manner; however, we find that the defendant suffered no prejudice from any of the evidentiary rulings. In fact, the trial court overruled the state’s motion
 
 in limine
 
 with regard to some of the letters, and the state and the defendant examined Ms. Coleman at great length about the content and meaning of these letters. Also, even though the phone records were not admitted into evidence, the defendant was able to examine Ms. Coleman about the phone records in an effort to impeach her testimony. The trial court made an exemplary effort to ensure that the defendant had every 117opportunity to cross-examine the witnesses against him and to challenge every facet of the state’s evidence. Accordingly, we find that the trial court did not err in denying the defendant’s motion for new trial. This assignment lacks merit.
 

 ERRORS PATENT
 

 Pursuant to LSA-C.Cr.P. art. 920, we have examined the record and we note the presence of one error patent. The defendant committed the instant offenses in July 2006. At that time, LSA-R.S. 14:95.1(B) provided:
 

 B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.
 

 The trial court sentenced the defendant to serve only five years in prison at hard labor for this offense. Also, the court did not levy any fine and did not impose the sentence without benefit of parole, probation or suspension of sentence. The defendant appears to be indigent, so he cannot be imprisoned in lieu of paying a fine. See
 
 Bearden v. Georgia,
 
 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983),
 
 [6]
 
 and the without benefit of parole, probation or suspension of sentence provision is self-operative. See LSA-R.S. 15:301.1. However, the five-year term is illegally lenient. Although neither the state nor the defendant raised this issue in either the district court or in this court, this court notices illegally lenient sentences on error patent review.
 
 State v. Zeigler,
 
 40,673 (La.App. 2d Cir.1/25/06), 920 So.2d 949, |
 
 writ denied,
 
 2006-1263 (La.2/1/08), 976 So.2d 708, citing
 
 State v. Williams,
 
 2000-1725 (La.11/28/01), 800 So.2d 790, and LSA-C.Cr.P. art. 882. Accordingly, we vacate the defendant’s sentence for possession of a firearm by a convicted felon and remand the case (No. 44,012-KA) for resentencing.
 

 
 *865
 
 CONCLUSION
 

 For the reasons set forth herein, we affirm the defendant’s convictions for aggravated burglary and possession of a firearm by a convicted felon and his sentence for aggravated burglary. We vacate the defendant’s sentence for possession of a firearm by a convicted felon and remand to the trial court for resentencing.
 

 CONVICTIONS AND SENTENCE FOR AGGRAVATED BURGLARY AFFIRMED; SENTENCE FOR POSSESSION OF A FIREARM BY A CONVICTED FELON VACATED AND REMANDED FOR RESENTENCING.
 

 [1]
 

 . The weapon used in this offense was not recovered.
 

 [2]
 

 . It does not appear that the defendant raised this issue in the district court via a motion to quash, LSA-C.Cr.P. art. 532, or otherwise. Nevertheless, double jeopardy may be raised at any time, but only once, and shall be tried by the court alone. LSA-C.Cr.P. art. 594. Despite the contemporaneous objection requirement of LSA-C.Cr.P. art. 841, a plea of double jeopardy has been considered for the first time on appeal. Compare
 
 State v. Austin,
 
 2004-993 (La.App. 5th Cir.3/1/05), 900 So.2d 867,
 
 writ denied,
 
 2005-0830 (La. 11/28/05), 916 So.2d 143,
 
 citing State v. Gordon,
 
 2000-1013 (La.App. 5th Cir. 11/27/01), 803 So.2d 131, 150,
 
 writs denied,
 
 2002-0362 (La. 12/19/02), 833 So.2d 336, 2002-0209 (La.2/14/03), 836 So.2d 134;
 
 State v. Walker,
 
 2000-01028 (La.App. 3d Cir. 1/31/01), 778 So.2d 1192,
 
 writ denied,
 
 2001-0546 (La.2/1/02), 808 So.2d 336,
 
 citing State v. Earnest,
 
 95-1689 (La.App. 3d Cir.5/8/96), 673 So.2d 1341. See also
 
 State v. Simpson,
 
 371 So.2d 733 (La.1979). (In the context of a mistrial, 'Tilt is apparent that contemporaneous objection and reservation of a bill are not applicable to a plea of double jeopardy.”)
 

 [3]
 

 . The papers the defendant threw at the jury contained one letter from Ms. Coleman and some cell phone records. The record indicates that the parties had a total of six letters from Ms. Coleman, but only five of the letters are marked for identification and included with the record on appeal as exhibits. The record also indicates that the court formally admitted only two of the letters, Exhibits S-l and S-2, into evidence. A third letter, Exhibit D-2, is shown in the record as received into evidence without the court verbally entering a formal order. Finally, Exhibits D-l and D-3 were noted, in open court, by the clerk as having been entered into evidence.
 

 [4]
 

 . We note that the behavior of the defendant and the response of the bailiff were clearly not remarks or comments within the ambit of LSA-C.Cr.P. arts. 770 and 771, which provide:
 

 Art. 770. Prejudicial remarks; basis of mistrial
 

 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
 

 (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
 

 (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
 

 (3) The failure of the defendant to testify in his own defense; or
 

 (4) The refusal of the judge to direct a verdict.
 

 An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
 

 Art. 771. Admonition
 

 In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the juty, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
 

 (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
 

 (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 

 [5]
 

 . The defendant attached two of the letters from Ms. Coleman to his pro se brief. Although attachments to appellate briefs do not form a part of the record on appeal, the letters attached by the defendant are identical to Exhibits S-l and S-2 which were admitted into evidence and which were the subject of a substantial amount of Ms. Coleman's testimony at trial.
 

 [6]
 

 . See also
 
 State v. Jones,
 
 42,531 (La.App. 2d Cir. 11/7/07), 968 So.2d 1247;
 
 State v. Griffin,
 
 41,946 (La.App. 2d Cir.5/2/07), 956 So.2d 199, and
 
 State v. Price,
 
 31,368 (La.App. 2d Cir. 10/28/98), 721 So.2d 511.