WEIMER, Justice.
 
 [1]
 

 11 This matter arises from a challenge to the constitutionality of Louisiana’s possession of marijuana, second offense, law. This case is before us on direct appeal from a judgment declaring LSA-R.S. 40:966(E)(2) unconstitutional on grounds that the statute improperly allows the State to use a prior misdemeanor conviction of possession of marijuana, first offense, obtained in a proceeding in which there was no right to trial by jury, to increase the statutory maximum penalty available for a second offense possession of marijuana.
 
 [2]
 
 The district court found that the State’s use of the nonjury misdemean- or predicate to increase the maximum sentence for a second offense marijuana conviction violates the Sixth and Fourteenth Amendments to the United States Constitution, as interpreted by the United States Supreme Court in
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and this court in
 
 State v. Brown,
 
 03-2788 (La.7/6/04), 879 So.2d 1276.
 

 After reviewing the statute, the jurisprudence, and the constitutional provisions at issue, we find, contrary to the conclusion of the district court, that LSA-R.S. 40:966(E)(2) does not suffer from a constitutional infirmity. For the reasons set forth, we find that the Sixth and Fourteenth Amendments, as construed in
 
 12Apprendi
 
 and
 
 Brown,
 
 do not preclude the sentence-enhancing use of a prior valid, fair, and reliable conviction of a misdemeanor, obtained against an adult, where the misdemeanor proceeding included all the constitutional protections applicable to such proceedings, even though these protections do not include the right to trial by jury. Accordingly, we reverse the judgment of the district court granting the defendant’s motion to quash and declaring LSA-R.S. 40:966(E)(2) unconstitutional, and remand for further proceedings.
 

 BACKGROUND FACTS AND PROCEDURAL HISTORY
 

 Because the underlying facts of this case are not relevant to the resolution of the legal issue presented in this appeal, the history of this proceeding can be briefly summarized.
 

 By bill of information dated March 14, 2008, the defendant, Tyrone Jefferson, was charged with possession of marijuana, second offense, a violation of LSA-R.S. 40:966(E)(2). A previous conviction for
 
 *114
 
 possession of marijuana, first offense, in Case Number 444-057-K of the Orleans Parish Criminal District Court was alleged in the charging document. The defendant entered a plea of not guilty.
 

 On May 12, 2008, the defendant filed a motion to quash the bill of information, alleging that LSA-R.S. 40:966(E)(2) is unconstitutional because it provides increased penalties for recidivist offenders on the basis of a prior misdemeanor conviction [^obtained without the right to a jury trial, in violation of
 
 Apprendi, supra,
 
 and
 
 Brown, supra.
 
 Following a hearing, the district court granted the motion to quash the bill of information and declared LSA-R.S. 40:966(E)(2) to be unconstitutional. In addition, the district court barred the State from prosecuting the defendant on any charge carrying a penalty beyond the statutory maximum for possession of marijuana, first offense.
 

 The State appealed the district court judgment to this court, which has jurisdiction over this appeal pursuant to La. Const, art. V, § 5(D).
 
 [3]
 

 DISCUSSION
 

 Louisiana defines the offense of possession of marijuana, and provides for its punishment, in LSA-R.S. 40:966, which states in relevant part:
 

 C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner or as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this Part....
 

 [[Image here]]
 

 E. Possession of marijuana. (1) Except as provided in Subsections E and F of this Section, on a first conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof, the offender shall be fined not more than five hundred dollars, imprisoned in the parish jail for not more than six months, or both.
 

 (2) Except as provided in Subsection F or G of this Section, on a second conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof, the offender shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than five years, or both.
 

 |4Pursuant to this statutory scheme, a first offense marijuana possession is a misdemeanor, punishable by a fine of not more than five hundred dollars, imprisonment in parish jail for not more" than six months, or both. A second offense marijuana possession is a felony, punishable by a fine of not more than two thousand dollars, imprisonment with or without hard labor for not more than five years, or both.
 

 For purposes of the present appeal, the significance of this distinction lies in the fact that the right to a jury trial does not attach to a charge of first offense marijuana possession. Based on LSA-C.Cr.P. art. 779, the right to a jury trial for a misdemeanor charge attaches only if the misdemeanor is punishable by a fine in excess of one thousand dollars or imprisonment for more than six months.
 
 [4]
 

 
 *115
 
 In his motion to quash before the district court, and again, before this court, the defendant argues that both the Sixth and Fourteenth Amendments forbid the State from using a predicate conviction for possession of marijuana, first offense, to enhance a charge of possession of marijuana pursuant to LSA-R.S. 40:966(E)(2) because that predicate conviction did not afford the defendant the right to trial by jury. To support this argument, defendant relies on a series of United States Supreme Court decisions, beginning with
 
 Apprendi, supra,
 
 which establish an adult criminal defendant’s general right, under the Sixth and Fourteenth Amendments, to a jury finding beyond a reasonable doubt of any fact used to increase the sentence for a felony conviction beyond the maximum term permitted by conviction of the charged |soffense alone.
 
 See, e.g., United States v. Booker,
 
 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005);
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In addition, defendant relies on a decision from this court,
 
 State v. Brown, supra,
 
 which draws upon
 
 Apprendi
 
 to resolve the narrow question of whether juvenile adjudications can be used to enhance a sentence under Louisiana’s Habitual Offender Law, LSA-R.S. 15:529.1.
 

 In
 
 Apprendi,
 
 the Supreme Court held that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
 
 Apprendi,
 
 530 U.S. at 490, 120 S.Ct. at 2362-2363.
 

 Before this court, the State, like the defendant, focuses upon the language in
 
 Apprendi,
 
 but uses its holding to argue that the decision is no bar to the statute at issue here, since the exception for prior convictions carved out by the Supreme Court in
 
 Apprendi
 
 does not distinguish between felony and misdemeanor convictions. Further, the State argues that even if
 
 Apprendi
 
 applies, the statute at issue is still constitutional because pursuant to LSA-R.S. 40:966(E)(2), the fact of a prior conviction is an element of the offense which must be included in the indictment or information and found by the jury beyond a reasonable doubt.
 

 As framed by the State, then, the issue presented in this case is whether a misdemeanor conviction obtained without a right to trial by jury falls within
 
 Ap-prendi’s
 
 exception for “prior convictions.” To understand that exception and its implications for the constitutionality of Louisiana’s second offense possession of marijuana law, it is necessary to examine
 
 Apprendi
 
 and the context in which its “prior conviction” exception arises.
 

 |nThe “prior conviction” exception of
 
 Ap-prendi
 
 arises primarily from the Supreme Court’s decision in
 
 Almendarez-Torres v. United States,
 
 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In that case, an indictment charged the defendant with a violation of 8 U.S.C. § 1326, which penalized deported aliens for reentry into the country and increased the maximum punishment if the prior deportation arose from the alien’s conviction of one or more aggravated felonies. Under subsection (a) of the federal statute, the crime was de~
 
 *116
 
 fined and the punishment of a fíne or imprisonment for not more than two years, or both was imposed; under subsection (b), an alien whose deportation occurred subsequent to a conviction of an aggravated felony was subject to a fine or imprisonment for not more than 20 years, or both. The indictment charging defendant did not allege that he had been deported pursuant to an earlier conviction of an aggravated felony.
 

 The defendant subsequently entered a plea of guilty, admitting that he had been deported, that he had later unlawfully returned to the United States, and that the earlier deportation had occurred pursuant to three earlier convictions for aggravated felonies. At his sentencing hearing, the defendant argued that because an indictment must set forth all the elements of a crime, and his indictment had not mentioned his earlier aggravated felony convictions, he could not be sentenced to more than two years imprisonment, the maximum punishment allowed for an offender without an earlier conviction. The federal district court rejected this argument and imposed a sentence of 85 months imprisonment, a sentence within the federal sentencing guideline range after considering the prior aggravated felony convictions. The federal appellate court affirmed, and the Supreme Court granted certiorari.
 
 Almendarez-Torres,
 
 523 U.S. at 227-228, 118 S.Ct. at 1222-1223.
 

 |7Before the Supreme Court, the defendant argued that the Constitution required the treatment of his prior convictions as an element of the current criminal offense, which must be charged in the indictment and proved to a jury beyond a reasonable doubt. The Supreme Court disagreed, noting that the subject matter of subsection (b) of the statute is recidivism, or prior commission of a serious crime, “as typical a sentencing factor as one might imagine.”
 
 Id.,
 
 523 U.S. at 230,118 S.Ct. at 1224. In fact, the Court described recidivism as “a traditional, if not the most traditional, basis for a sentencing court’s increasing an offender’s sentence.”
 
 Id.,
 
 523 U.S. at 243, 118 S.Ct. at 1230. Ultimately, the Court refused to adopt a blanket rule treating recidivism as an element of an offense, thereby requiring that it be charged in the indictment and proved to a jury beyond a reasonable doubt. Instead, the Supreme Court found that subsection (b) of the federal statute set forth a sentencing factor, and not a separate criminal offense.
 
 Id.,
 
 523 U.S. at 235, 118 S.Ct. at 1226.
 

 Almendarez-Torres
 
 was followed shortly by
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In
 
 Jones,
 
 the Supreme Court addressed the question of whether the federal carjacking statute, 18 U.S.C. § 2119, defined three distinct crimes or created a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirement of charge and jury verdict. At the time of the offense in
 
 Jones,
 
 the federal carjacking statute defined the crime and, in subsection (1), set forth a punishment of fine or imprisonment for not more than 15 years, or both. Subsection (2) of the statute set forth a punishment of fine or imprisonment for not more than 25 years or both, if serious bodily injury resulted during the commission of the offense. Subsection (3) set forth a punishment of fine or imprisonment for any number of years up to life imprisonment, or both, if death resulted during the commission of the |soffense.
 
 Id.,
 
 526 U.S. at 230, 119 S.Ct. at 1218. Before the Supreme Court, the government contended that the statute described a single offense, subject to “sentencing enhancements” that need not be separately charged and could be imposed solely by a judge. The defendant argued that the
 
 *117
 
 statute established three separate offenses, each with its own requirement of charging notice and jury trial. The Supreme Court agreed with the defendant, concluding that the statute established three separate offenses by the specification of three distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict.
 
 Jones,
 
 526 U.S. at 252, 119 S.Ct. at 1228.
 

 In its analysis of the Sixth Amendment concerns presented by the case, the Supreme Court acknowledged that
 
 Almenda-rez-Torres
 
 had recently held that sentence-enhancing prior convictions do not require charging notice and proof beyond a reasonable doubt to a jury.
 
 Jones,
 
 526 U.S. at 248, 119 S.Ct. at 1226-1227. This holding, the Court explained:
 

 [Rjested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment. The Court’s repeated emphasis on the distinctive significance of recidivism leaves no question that the Court [in
 
 Almendarez-T ar-res
 
 ] regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing.
 

 Jones,
 
 526 U.S. at 249, 119 S.Ct. at 1227. In describing the reasoning behind the distinction, the Supreme Court stated:
 

 One basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.
 

 Id.,
 
 526 U.S. at 249,199 S.Ct. at 1227.
 

 |
 
 <tJones
 
 was soon followed by the Supreme Court’s decision in
 
 Apprendi, supra,
 
 in which the high court squarely held that except for the fact of a prior conviction, the Constitution requires any fact which authorizes a penalty beyond the prescribed statutory maximum for the charged offense to be separately alleged in the charging document and proved to a jury beyond a reasonable doubt.
 
 Appren-di,
 
 530 U.S. at 490, 120 S.Ct. at 2362-2363.
 
 Apprendi
 
 addressed a New Jersey statutory scheme that specified the maximum sentence for the offense of possession of a firearm for an unlawful purpose, but provided additional punishment if the trial court found, by a preponderance of the evidence, that the unlawful purpose was to intimidate an individual or group because of race, color, gender, handicap, religion, sexual orientation or ethnicity.
 

 In
 
 Apprendi,
 
 the Court rejected New Jersey’s attempt to defend the statutory scheme by relying upon
 
 Almendarez-Tor-res,
 
 explaining that
 
 Almendarez-Torres
 
 was confined to recidivism as a sentencing fact. In doing so, the Court reiterated
 
 Almendarez-Torres’s
 
 emphasis on recidivism as a “traditional, if not the most traditional, basis” for imposition of increased punishment by sentencing courts, and repeated its observation in
 
 Jones
 
 that the evidence of defendant Almendarez-Torres’s recidivism consisted of prior convictions of criminal conduct obtained in proceedings which themselves afforded substantial constitutional protections.
 
 Ap-prendi,
 
 530 U.S. at 488, 120 S.Ct. at 2361-2362.
 

 As the Supreme Court noted: “Because Almendarez-Torres had
 
 admitted
 
 the three earlier convictions for aggravated felonies — all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own — no question concerning the right to a jury trial or the standard of proof that would
 
 *118
 
 apply to a contested issue of fact was before the Court.”
 
 Apprendi,
 
 530 U.S. at 488, 120 hpS.Ct. at 2361. In other words, the Court concluded, “[b]oth the certainty that procedural safeguards attached to any ‘fact’ of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that ‘fact’ in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a ‘fact’ increasing punishment beyond the maximum of the statutory range.”
 
 Apprendi,
 
 530 U.S. at 488, 120 S.Ct. at 2362.
 

 Finally, the Supreme Court distinguished
 
 Almendarez-Torres
 
 from the precise factual situation presented in
 
 Appren-di:
 

 The reasons supporting an exception from the general rule for the statute construed in
 
 [Almendarez-Torres
 
 ] do not apply to the New Jersey statute [at issue in
 
 Apprendi
 
 ]. Whereas recidivism ‘does not relate to the commission of the offense’ itself, New Jersey’s biased purpose inquiry goes precisely to what happened in the ‘commission of the offense.’ Moreover, there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.
 

 Apprendi,
 
 530 U.S. at 496, 120 S.Ct. at 2366 (citations omitted).
 

 In the present case, the defendant draws upon the above-quoted language in
 
 Apprendi
 
 to argue that under
 
 Apprendi,
 
 the defendant’s recidivism may enhance a current sentence only insofar as that recidivism, or prior criminal behavior, is found true by a jury in the current proceeding, or was already found true in a prior proceeding wherein the defendant had procedural protections that included the right to a jury trial. In other words, defendant argues (and the district court apparently agreed) that
 
 Apprendi
 
 requires that the jury trial right — along with the right to charging notice and the right to proof beyond a reasonable
 
 doubt
 
 — must attach at some point to the determination of any fact about an adult offense, or offender, that | t increases the maximum punishment for the offense beyond the prescribed statutory range. We do not read
 
 Apprendi
 
 so broadly.
 

 As revealed above,
 
 Apprendi’s
 
 “prior conviction” exception is based on two considerations: (1) the historical role of recidivism in sentencing decisions; and (2) the procedural safeguards attached to a prior conviction. Prior nonjury misdemeanor convictions substantially satisfy all the reasons set forth in
 
 Almendarez-Torres Jones
 
 and
 
 Apprendi
 
 as to why prior convictions may be employed to increase the maximum punishment for a subsequent offense without the need for jury findings in the later case. Like pri- or felony convictions, misdemeanor convictions do not involve facts about the current offense that were withheld from a jury in the current case,
 
 [5]
 
 but instead con
 
 *119
 
 cern the defendant’s
 
 recidivism
 
 — i.e., his or her status as a repeat offender — a basis upon which courts traditionally have imposed harsher sentences.
 
 Apprendi,
 
 530 U.S. at 488, 120 S.Ct. at 2361-2362 (the prior conviction exception is based upon the premise, approved in
 
 Almenda-rez-Torres,
 
 that recidivism is a traditional, if not the most traditional, basis for a sentencing court’s increasing an offender’s sentence). Moreover, the prior criminal misconduct establishing this recidivism was previously and reliably adjudicated in proceedings that included all the procedural protections the U.S. Constitution requires
 
 for such proceedings, ie.,
 
 the right to notice, to counsel, to confront and cross-examine witnesses, to the privilege against self-incrimination, and to adjudication based on proof beyond a reasonable doubt.
 
 State
 
 v.
 
 Jones,
 
 404 So.2d 1192, 1197 (La.1981) (Dennis, J., Dixon, C.J., and Calogero, J., additionally concurring); La. Const, art. I, §§ 13, 16. In fact, a defendant in a misdemeanor prosecution involving a petty crime is entitled to all the procedural protections available to a defendant in a felony prosecution, with the exception of the right to a jury trial, which the U.S. Supreme Court has determined is not essential to fair and reliable fact finding in a misdemeanor case involving a petty or non-serious crime.
 
 Duncan v. Louisiana,
 
 391 U.S. 145, 158, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968) (“[W]e hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial and prosecuting petty crimes without extending a right to jury trial.”).
 

 Nevertheless, the defendant relies on passages from
 
 Almendarez-Torres, Jones,
 
 and
 
 Apprendi
 
 to argue that the right to a jury trial in proceedings leading to the prior conviction is essential to permitting its use for later enhancement under the “prior conviction” exception. In particular, defendant relies on the language in
 
 Jones
 
 explaining that one reason for the constitutional distinctiveness of prior convictions is that “a prior conviction must have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees,”
 
 Jones,
 
 526 U.S. at 249, 119 S.Ct. at 1227, to argue that the jury trial right is an indispensable part of a fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions and one of the procedural safeguards necessary under
 
 Apprendi
 
 for a prior conviction to be exempt from its rule.
 

 We do not read the cited language from
 
 Almendarez-Torres, Jones,
 
 and
 
 Apprendi
 
 as prohibiting the use of prior convictions to authorize an increased sentence in a later case unless the prior conviction specifically included the right to a jury trial. To the contrary, neither
 
 Jones
 
 nor
 
 Ap-prendi
 
 was directly concerned with 11 ode riding the circumstances under which prior adjudications of criminal conduct may be used to enhance the maximum sentence for a subsequent adult offense. Further, nothing in
 
 Jones, Apprendi,
 
 or even
 
 Almendarez-Torres
 
 stated or implied that a prior criminal conviction forming the basis of a recidivism sentencing factor in a criminal proceeding must always have been obtained in a proceeding that included, in particular, the right to jury trial. In distinguishing
 
 Almendarez-Toms
 
 and explaining its premise,
 
 Jones
 
 and
 
 Apprendi
 
 cited a group of procedural rights and safeguards that make prior adult felony convictions fair and reliable evidence of
 
 *120
 
 previous criminal misconduct, but they did not state that each and every one of these guarantees, or any one of them in particular, is essential to the availability of a prior criminal conviction to furnish such proof.
 
 [6]
 

 Our examination of the
 
 Apprendi
 
 line of cases convinces us that reliability, assured through proceedings that included all the procedural protections the Constitution requires for those proceedings, is the
 
 sine qua non
 
 for use of prior convictions to enhance a sentence under the “prior conviction” exception, and not the right to a jury trial. Indeed, it makes little sense to conclude, under
 
 Apprendi,
 
 that a judgment of criminality which the Sixth and Fourteenth Amendments deem fair and reliable enough, when rendered, to impose criminal penalties upon a defendant is nonetheless constitutionally inadequate for later use to establish the defendant’s recidivism.
 

 Our conclusion in this regard is buttressed when one considers the rationale behind the prior conviction exception.
 
 Ap-prendi
 
 sets limits on judicial factfinding. |
 
 uSee, Blakely,
 
 542 U.S. at 303-304, 124 5.Ct. at 2537 (emphasis in original) (For
 
 Apprendi
 
 purposes, “the relevant ‘statutory maximum’ is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose
 
 without
 
 additional findings.”) A judge has to find no more additional facts when the defendant’s prior conviction is for a misdemeanor than when it is for a felony. Moreover, under Louisiana’s statutory scheme, the relevant sentencing “fact” is the defendant’s prior conviction of first offense possession of marijuana, a “fact” which is charged in the bill of information and which must be found by the jury beyond a reasonable doubt.
 
 [7]
 

 To accept the defendant’s argument that a prior felony conviction may be used as a sentence enhancer, but not a nonjury misdemeanor conviction, this court would have to ignore the presumption of regularity attaching to a final judgment, LSA-R.S. 15:432, a presumption “deeply rooted” in the jurisprudence, even when the question is waiver of constitutional rights.
 
 Parke v. Raley,
 
 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). Further, it would require this court to take a step that the Supreme Court has refused to take despite its recognition that the right to a jury in trials involving serious crimes is fundamental to the criminal justice system — a conclusion that verdicts rendered by judges are less reliable than verdicts rendered by juries and, therefore, cannot serve as a basis for turning a petty crime into a felony.
 
 Duncan,
 
 391 U.S. at 158, 88 S.Ct. at 1452 (“We would not assert, however, that every criminal trial — or any particular trial — held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.”). | ^Implicit in the Supreme Court decisions holding that a juiy trial is not required in petty crimes or offenses, however, is the premise that this particular
 
 *121
 
 safeguard is not constitutionally essential to a fair and reliable adjudication in such cases.
 

 Defendant argues nonetheless that, whether the prior conviction is for a misdemeanor or a felony, the continued viability of the prior conviction exception arising from
 
 Almendarez-Torres
 
 is highly questionable. In support of this position, defendant directs this court’s attention to the concurring opinions of Justice Thomas in Apprendi,
 
 [8]
 
 and
 
 Shepard v. United States,
 
 544 U.S. 13, 27, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (2005) (Thomas, J. concurring), which suggest that a majority of the Supreme Court is now of the opinion that
 
 Almendarez-Torres
 
 was incorrectly decided. However, despite opportunities to do so, the Supreme Court has not revisited its ruling in
 
 Almendarez-Toms.
 
 We must conclude that its holding remains valid. Other jurisdictions to consider the question support the conclusion, that we reach today, that misdemeanor convictions fall within the
 
 Apprendi
 
 prior conviction exception, despite the lack of a jury trial in such proceedings.
 
 See, State v. Pecora,
 
 181 Vt. 627, 928 A.2d 479 (2007);
 
 People v. Huber,
 
 139 P.3d 628 (Colo.2006);
 
 People v. Palmer,
 
 142 Cal.App. 724, 47 Cal.Rptr.3d 864 (2006);
 
 State v. Aleman,
 
 210 Ariz. 232, 109 P.3d 571 (Ct.App.2005);
 
 Goldsberry v. State,
 
 821 N.E.2d 447 (Ind.Ct.App.2005).
 

 In its most recent examination of the
 
 Apprendi
 
 rule, the Supreme Court explained:
 

 The rule’s animating principle is the preservation of the jury’s historic role as a bulwark between the State and the accused at the trial for an alleged offense.
 
 See Apprendi
 
 530 U.S., at 477, 120 S.Ct. 2348, 147 L.Ed.2d 435. Guided by that principle, our opinions make clear that the Sixth 11fiAmendment does not countenance legislative encroachment on the jury’s traditional domain.
 
 See id,
 
 at 497, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. We accordingly considered whether the finding of a particular fact was understood as within “the domain of the jury ... by those who framed the Bill of Rights.”
 
 Harris v. United States,
 
 536 U.S. 545, 557, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion). In undertaking this inquiry, we remain cognizant that administration of a discrete criminal justice system is among the basic sovereign prerogatives States retain.
 
 See, e.g., Patterson v. New York,
 
 432 U.S. 197, 201, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).
 

 Oregon v. Ice,
 
 555 U.S. -, 129 S.Ct. 711, 717, 172 L.Ed.2d 517 (2009). In determining whether
 
 Apprendi
 
 should be extended to situations not previously considered, the Supreme Court noted that the “twin considerations — historical practice and respect for state sovereignty” must be balanced.
 
 Id.
 
 In this case, those considerations weigh in favor of a conclusion that
 
 Apprendi
 
 should not be construed to bar the use of nonjury misdemeanor convictions to authorize an increased sentence in a later proceeding.
 

 As the Supreme Court has made clear, recidivism as a sentencing factor is not a matter within the traditional domain of the jury.
 
 Almendarez-Torres,
 
 523 U.S. at 243, 118 S.Ct. at 1230 (describing recidivism as “a traditional, if not the most traditional, basis for a sentencing court’s increasing an offender’s sentence.”). The Louisiana legislature, on the other hand, has seen fit to address the problem of repeat drug possession offenses by enacting a recidivism statute that imposes enhanced penalties for each subsequent offense. Consistent with tra
 
 *122
 
 ditional recidivist statutes, the increased penalty for a subsequent offense does not re-punish a defendant for the first offense, but rather punishes with greater severity the last offense committed by the defendant.
 
 United States v. Rodriguez,
 
 553 U.S. 1783, 128 S.Ct. 1783, 1789, 170 L.Ed.2d 719 (2008) (“When a defendant is given a higher sentence under a recidivism statute — or for that matter, when a sentencing judge, under a guidelines regime or a [17discretionary sentencing system, increases a sentence based on the defendant’s criminal history — 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant’s ‘status as a recidivist.’ The sentence ‘is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.’
 
 Gryger v. Burke,
 
 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).”). It is within the particular province of the State to define recidivism and declare its consequences.
 

 In light of the above, we find, contrary to the conclusions of the district court, that the Sixth and Fourteenth Amendments, as construed in
 
 Apprendi
 
 and its progeny, do not preclude the sentence-enhancing use, against an adult, of a prior valid, fair and reliable conviction of a misdemeanor, obtained as an adult, where the misdemeanor proceeding included all the constitutional protections applicable to such proceedings, even though these protections do not include the right to a jury trial.
 

 We also find, contrary to the argument of defendant, that a different conclusion is not mandated by our decision in
 
 Brown, supra.
 
 In
 
 Brown,
 
 this court addressed a discrete question: whether enhancing the sentence of an adult on the basis of a prior juvenile adjudication is contrary to
 
 Ap-prendi.
 

 In resolving the question, this court noted that after
 
 Apprendi,
 
 courts confronted with the question of whether a juvenile adjudication falls within the
 
 Apprendi
 
 exception for “prior convictions” have been divided on the issue, resulting in “two reasonable schools of thought.”
 
 Brown,
 
 OS-2788 at 13, 879 So.2d at 1285. In determining which of the two avenues Louisiana should follow, the Court examined “recent jurisprudence concerning the juvenile justice system and scholarly works addressing this issue,”
 
 Brown,
 
 03-2788 at 14, 879 So.2d at 1285, in order to determine, just as we do in this case with respect to nonjury misdemeanors, whether | ^juvenile adjudications in Louisiana are sufficiently reliable, even without a jury trial, to justify the consequences of their use as criminal sentence enhancements and therefore fall within
 
 Apprendi’s
 
 prior conviction exception. The Court focused on “ ‘the unique nature of the juvenile system ... manifested in its non-criminal or ‘civil’ nature, its focus on rehabilitation and individual treatment rather than retribution, and the state’s role as
 
 parens patriae
 
 in managing the welfare of the juvenile in state custody.’ ”
 
 Brown,
 
 03-2788 at 15-16, 879 So.2d at 1286
 
 (quoting In re C.B.,
 
 97-2783, p. 10 (La.3/4/98), 708 So.2d 391, 396-397). The court noted that, based on the Supreme Court’s reasoning in
 
 McKeiver v. Pennsylvania,
 
 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), it had previously determined that due process and fundamental fairness do not require that a juvenile be granted the right to trial by jury, even though the Louisiana constitution guarantees that right in certain criminal prosecutions. Br
 
 own,
 
 03-2788 at 16, 879 So.2d at 1287. The Court cited to
 
 MeKeiver’s
 
 determination that the Sixth Amendment does not apply in juvenile adjudications because the juvenile proceedings is not a “criminal prosecution” within the reach of the Sixth Amendment as justification for
 
 *123
 
 this holding.
 
 Id.
 
 While the Court in
 
 Brown
 
 went on to acknowledge that certain changes in the juvenile system had “blurred the distinction between adult and juvenile proceedings,” it nevertheless reaffirmed the determination that due process does not afford a juvenile the right to a jury trial in a delinquency proceeding, due to the fact that “there remains a great disparity in the severity of penalties faced by a juvenile charged with delinquency and an adult defendant charged with the same crime.”
 
 Brown,
 
 03-2788 at 18, 879 So.2d at 1288
 
 (quoting State in the Interest of D.J.,
 
 01-2149, p. 10 (La.5/14/02), 817 So.2d 26, 33).
 

 119Ultimately, the court in
 
 Brown
 
 reasoned that “because juveniles do not have a right to a jury trial in these [juvenile. adjudicatory] proceedings, juvenile adjudications cannot be used to enhance adult felony convictions pursuant to La. Rev. Stat. 15:529.1.”
 
 Brown,
 
 03-2788 at 18, 879 So.2d at 1288. However, and most significantly for this case, the Couit went on to explain why juvenile adjudications are sufficiently reliable, even without a jury trial, to support dispositions within the juvenile justice system, but not to support enhanced sentencing for adults.
 
 Id.
 
 The reasoning of the court in this regard is significant because it did not, as argued by defendant, rest solely on the lack of a jury trial. To the contrary, the court noted that “[u]nder the guise of
 
 parens patriae,
 
 juvenile courts emphasize treatment, supervision, and control rather than punishment,” and that “[t]he hallmark of special juvenile procedures is their non-criminal nature.”
 
 Brown,
 
 03-2788 at 19, 879 So.2d at 1288. Stated simply, the court found that “there is a difference between a ‘prior conviction’ and a prior juvenile adjudication.”
 
 Brown,
 
 03-2788 at 20, 879 So.2d at 1289. This difference is not found exclusively in the lack of a jury trial. Rather, the court emphasized:
 

 A juvenile adjudication is not a conviction of any crime. Therefore, this adjudication should not be counted as a “pri- or conviction” for
 
 Apprendi
 
 purposes. The determination that a jury trial was not constitutionally required in juvenile adjudications was predicated upon the non-criminal treatment of the adjudicated juvenile delinquent. It would be incongruous and illogical to allow the noncriminal adjudication of a juvenile delinquent to serve as a criminal sentencing enhancer. To equate this adjudication with a conviction as a predicate offense for purposes of the Habitual Offender Law would subvert the civil trappings of the juvenile adjudication to an extent to make it fundamentally unfair and thus, violative of due process.
 

 Brown,
 
 03-2788 at 20-21, 879 So.2d at 1289 (citations omitted).
 

 Clearly, the court’s holding in
 
 Brown
 
 rested not on the singular fact of the lack of a jury trial in juvenile adjudications, but on the fundamental differences in purpose 1aiand goals between the juvenile justice system and the criminal justice system. Contrary to defendant’s argument, there are differences between a nonjury misdemeanor conviction and a juvenile adjudication proceeding other than the fact that, in Louisiana, neither has the right to trial by jury. The primary distinction, as pointed out in
 
 Brown,
 
 is that a juvenile adjudication is not a conviction of any crime. By contrast, a misdemeanor conviction is a conviction of a crime, although a lesser grade of criminal conduct than a felony. Defendant’s protestations to the contrary, the court’s holding in
 
 Brown
 
 that juvenile adjudications do not fall within the prior conviction exception of
 
 Apprendi
 
 cannot be used to bootstrap nonjury misdemeanor criminal convictions into a similar constitutional position.
 

 
 *124
 
 CONCLUSION
 

 In the final analysis, we find that Louisiana’s statutory scheme of increased punishment for recidivist marijuana possession is in line with the constitutional principles of
 
 Apprendi
 
 and its progeny, and does not conflict with our ruling in
 
 Brown,
 
 which is limited to juvenile adjudications and the unique nature of the juvenile justice system. More specifically, we find that the Sixth and Fourteenth Amendments, as construed in
 
 Apprendi
 
 and
 
 Brown,
 
 do not preclude the sentence-enhancing use, against an adult, of a prior valid, fair, and reliable conviction of a misdemeanor, obtained as an adult, where the misdemeanor proceeding included all the constitutional protections applicable to such proceedings, even though these protections do not include the right to trial by jury. Louisiana’s statutory scheme satisfies the requirement of due process because under the Sixth and Fourteenth Amendments, states are allowed the presumption that in petty crimes and offenses, trial judges are capable of reliable fact finding.
 

 121 Accordingly, we reverse the judgment of the district court granting the defendant’s motion to quash and declaring LSA-R.S. 40:966(E)(2) unconstitutional, and remand for further proceedings.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Judge Benjamin Jones, of the Fourth Judicial District, assigned as Justice
 
 Pro Tempore,
 
 participating in the decision.
 

 [2]
 

 . The maximum penalty for first offense possession of marijuana is a fine of not more than five hundred dollars, imprisonment in the parish jail for not more than six months, or both. The maximum penalty for second offense possession of marijuana is a fine of not more than two thousand dollars, imprisonment with or without hard labor for not more than five years, or both. LSA-R.S. 40:966(E).
 

 [3]
 

 . La. Const, art. V, § 5(D) provides this court with appellate jurisdiction when "a law or ordinance has been declared unconstitutional.”
 

 [4]
 

 . LSA-C.Cr.P. art. 779 provides:
 

 A. A defendant charged with a misdemeanor in which the punishment, as set forth in the statute defining the offense,
 
 *115
 
 may be a fine in excess of one thousand dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict.
 

 B. The defendant charged with any other misdemeanor shall be tried by the court without a jury.
 

 [5]
 

 . With the exception of
 
 Almendarez-Torres,
 
 where the issue of penalty enhancement was based on recidivism in the form of prior felony convictions, the penalty enhancement at issue before the Supreme Court in the
 
 Appren-di
 
 line of cases was a fact involving the present conviction, found by the trial judge, upon a lesser burden of proof than beyond a reasonable doubt. In
 
 Jones,
 
 for example, the penalty-enhancing “fact” was a finding of "serious bodily injury” related to the crime at issue, found by the trial judge to exist by a preponderance of the evidence.
 
 Jones,
 
 526 U.S. at 231, 119 S.Ct. at 1218. In
 
 Apprendi,
 
 the penalty-enhancing “fact” was the defendant's racially biased purpose in committing
 
 *119
 
 the crime, found by the trial judge by a preponderance of the evidence.
 
 Apprendi,
 
 530 U.S. at 470-471, 120 S.Ct. at 2352.
 

 [6]
 

 . In fact, in
 
 Nichols v. United States,
 
 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), albeit a decision preceding
 
 Apprendi,
 
 the Supreme Court held that, consistent with the Sixth and Fourteenth Amendments, a prior constitutionally valid uncounseled misdemeanor conviction is also valid when used to enhance punishment at a subsequent conviction. Tins, despite the fact that the prior proceeding did not include all the safeguards required for felony trials.
 

 [7]
 

 . While it is arguable, as the State contends, that the fact that the prior misdemeanor conviction must be submitted to and found by a jury beyond a reasonable doubt takes the Louisiana statute outside the literal rule of
 
 Ap-prendi,
 
 we do not base our decision in this case solely on this argument, but on a consideration of the principles underlying
 
 Apprendi
 
 and the implications of those principles for the Louisiana statutory scheme.
 

 [8]
 

 .
 
 Apprendi,
 
 530 U.S. at 520, 120 S.Ct. at 2379 (Thomas, J. concurring)