EDWIN A. LOMBARD, Judge.
 

 | tThe defendant, Gary Juengain, appeals his conviction for possession of cocaine and seeks a remand to the trial court for consideration of his motion for a new trial. After review of the record in light of the arguments of the parties and applicable law, we conditionally affirm the defendant’s conviction and remand the matter to the trial court for consideration of the defendant’s timely-filed motion for a new trial.
 

 Relevant Facts and Procedural History
 

 In July 2008, the defendant was charged with possession of cocaine, a violation of La.Rev.Stat. 40:967(0(2) and entered a plea of not guilty. The defendant’s motion to suppress the evidence was denied on July 28, 2008, and following a hearing on August 21, 2008, the defendant was found competent to stand trial.
 

 The defendant testified at the motion hearing on July 28, 2008, but not at trial. According to the defendant, on June 5, 2008, he was sitting with his nephew, Glen Andrews, inside his nephew’s Chevrolet Tahoe parked under the 1-10 over
 
 *502
 
 pass and selling blue jeans with two other people, identified only as Tucker and Tee-Tee, when two or three police cars with six officers drove up from the |2direction of Dryades Street and Claiborne Avenue. Upon stopping their vehicles, the police officers exited and ordered the defendant and his nephew out of the Tahoe. The men were taken to Central Lockup where Andrews was taken into a room and questioned for about thirty minutes. Detective Jacque exited the room and asked the defendant, “Who swallowed anything?” According to the defendant, he told Detective Jacque that no one swallowed anything and that he and Andrews were selling blue jeans. Detective Jacque responded that that was the wrong answer and that defendant was going to be charged. A minute later, Andrews was brought out of the room and allowed to telephone an officer named Brown who knew Andrews as a member of the Rebirth band. Andrews told Brown that he was not buying crack. The police threatened to charge Andrews but then destroyed the police report on Andrews and wrote a report on defendant. Andrews was subsequently released. The defendant insisted that he was innocent and stated that the only money he had was twenty dollars which Andrews gave to him. He testified that Detective Jacque and Officer Jackson knew him and had stopped him several times before his arrest. On cross-examination, the defendant denied being under the influence of narcotics on the day of his arrest but admitted having felony convictions for sexual battery, molestation of a juvenile, lewd conduct, possession of stolen property, possession of a stolen automobile, extortion, possession of cocaine and three misdemeanor charges of possession of drug paraphernalia. He insisted that on the day of his arrest he was helping his nephew sell eight pairs of blue jeans priced at between $140.00 and $170.00, although he could not identify the origin or brand of the jeans. The defendant denied being in possession of any drugs or walking away from the vehicle when stopped by the police on the day ofjdiis arrest and requested that the trial court order him a lie detector test to allow him to prove his innocence.
 

 Detective Wayne Jacque testified at both the motion hearing and again at trial. According to Detective Jacque, on June 5, 2008, he and his partner, Officer Demetrius Jackson, were driving eastbound on North Claiborne Avenue near the intersection of Dumaine Street when they observed the defendant standing under the 1-10 overpass counting paper currency. Because the area was known to the officers as a drug use and distribution area, they decided to conduct surveillance. Within minutes, Detective Jacque observed the defendant enter the passenger side of a red SUV that was parked nearby. The defendant placed an unknown object in his mouth, exited the SUV, looked around and began walking eastbound on Claiborne Avenue. The driver of the SUV drove off in an erratic manner. Suspecting a drug transaction, Detective Jacque and Officer Jackson elected to pursue defendant. They exited their vehicle, announced that they were police officers and began walking towards the defendant. The defendant turned and walked in the opposite direction. Detective Jacque informed the defendant of his Miranda rights and why he was being stopped. The defendant responded that he understood his rights. Detective Jacque observed a white compressed object inside of defendant’s mouth and, for safety reasons, requested that the defendant surrender the object. The defendant complied and Detective Jacque conducted a field test on the white object which resulted in a posi
 
 *503
 
 tive test for cocaine. Accordingly, the defendant was arrested for possession of cocaine.
 

 On cross-examination, Detective Jaeque conceded that he and Officer Jackson were approximately twenty or thirty feet from defendant when they observed the purported drug transaction and that he did not observe the defendant |4give the driver any money. According to Detective Jae-que, although he informed the defendant of his Miranda rights when he stopped him for a possible narcotics violation, the defendant was not under arrest at that point as he was not handcuffed and was free to leave.
 

 Officer Jackson also testified at the motion hearing and at trial, corroborating the testimony of his partner, Detective Jaeque. According to Officer Jackson, they watched the defendant for six or seven minutes before he entered the passenger side of a SUV where, using a cupping motion, the defendant placed an unknown object in his mouth, exited the SUV, looked around and began walking eastbound on Claiborne Avenue. Officer Jackson noted that when the defendant saw them exit their vehicle and walk towards him his eyes opened wide and he appeared to be scared before turning and walking in the opposite direction. After Detective Jaeque stopped defendant and informed him of his Miranda rights and why he was being stopped, Officer Jackson searched the area around defendant. On cross-examination, Officer Jackson conceded that the defendant was approximately one-half block away when he first observed him and approximately twenty-five feet when he observed him enter the SUV and put an unknown object into his mouth.
 

 John Palm, a criminalist for the New Orleans Police Department testified at trial that he performed a microcrystalline test and gas chromatograph mass spectral examination on the white object removed from defendant’s mouth and that the object tested positive for cocaine.
 

 Following trial by a six-person jury, the defendant was found guilty as charged on October 30, 2008. In November 2008, the defendant’s motions for a new trial, for post verdict judgment of acquittal and in arrest of judgment were | ^denied and, pursuant to the multiple bill filed by the State, the defendant was adjudicated a fourth felony offender and sentenced to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
 

 The defendant appeals his conviction with a brief filed by counsel and by supplemental
 
 pro se
 
 brief.
 

 Assignment of Error 1
 

 The defendant argues that the officers lacked reasonable suspicion for an investigatory stop and, accordingly, the trial court erred in denying his motion to suppress the evidence.
 

 A police officer has the right to detain briefly and interrogate a person when the officer has a reasonable articula-ble suspicion that the person is, has been, or is about to be engaged in criminal conduct. La.Code Crim. Proc. art. 215.1;
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “Reasonable suspicion” is something less than probable cause, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of an individual’s right to be free from governmental interference.
 
 State v. Robertson,
 
 97-2960, p. 2-3 (La.10/20/98), 721 So.2d 1268, 1269. Mere suspicious activity is not a sufficient basis for police interference with an individual’s freedom.
 
 State v. Williams,
 
 421 So.2d 874 (La.1982). “However, the level
 
 *504
 
 of suspicion need not rise to the probable cause needed for a lawful arrest.”
 
 State v. Huntley,
 
 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049. The detaining officer must have knowledge of specific, articula-ble facts, which if taken together with rational inferences from those facts, reasonably warrant the stop.
 
 State v. Dennis,
 
 98-1016, p. 4 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. The police do not have to observe what they know to be criminal | fibehavior before investigating.
 
 State v. Benjamin,
 
 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. The totality of the circumstances must be considered in determining whether reasonable suspicion exists.
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983). An investigative stop must be justified by some objective manifestation that the person to be stopped is or is about to be engaged in criminal activity, or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct.
 
 State v. Moreno,
 
 619 So.2d 62, 65 (La.1993). In reviewing the totality of the circumstances, the officer’s past experience, training, and common sense may be considered in determining if his inferences from the facts at hand were reasonable.
 
 State v. Cook,
 
 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227,1232.
 

 In the instant case, the arresting officers were on patrol in an area known for drug trafficking, observed the defendant counting paper currency, watched him as he entered a nearby parked vehicle, place an object into his mouth, and immediately exit the vehicle which drove away in an erratic manner. Given these facts, it was reasonable for the officers to suspect that a drug transaction had occurred and to initiate an investigatory stop. Further, when he observed the officers walking toward him, the defendant looked wide-eyed and shocked and attempted to walk away. Officer Jacque informed the defendant of his Miranda rights. When the defendant responded that he understood his rights, Officer Jacque saw a white compressed object inside defendant’s mouth. This observation, added to what the officers had already seen, gave them probable cause to believe the object was crack cocaine and thus probable cause to arrest the defendant. When the defendant was asked to remove the object, he complied. Officer Jacque field tested the object; it tested positive for crack cocaine. The defendant was placed |7under arrest. Accordingly, under the facts of this case, we cannot find that the trial court erred in denying the defendant’s motion to suppress the evidence and this assignment of error is without merit.
 

 Assignment of Error 2
 

 In a second assignment error, the defendant complains that he was improperly tried by a six-member jury. The defendant maintains that because of previous felony convictions he was subject to being charged as a multiple offender and sentenced as such to imprisonment of no less than twenty years at hard labor. Therefore, he argues he was entitled to be tried before a jury of twelve persons.
 

 The number of persons required for a jury in a criminal case is dictated by La. Const, art. I, § 17(A), which provides:
 

 (A) A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of who must concur to render a verdict....
 

 
 *505
 
 In addition, La.Code Crim. Proc. art. 782(A) provides, in pertinent part, that “[C]ases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.”
 

 The habitual offender proceeding is not applicable until after a person has been convicted of a felony within this state. La. Rev.Stat. 15:529.1(A) and (D). Thereafter, the filing of an information accusing the convicted felon of a previous conviction(s) is discretionary with the district attorney. La.Rev.Stat. 15:529.1(D). Hence, the habitual offender proceeding is a separate proceeding applicable only after conviction and then at the discretion of the district attorney. It forms no part 18of the punishment of the criminal case involving defendant’s guilt or innocence; therefore, it has no bearing on the determination of the number of persons comprising the jury for the trial of the case.
 
 State v. Sherer,
 
 354 So.2d 1038, 1040 (La.1978).
 

 In this case, the defendant was tried by a six-member jury for possession of cocaine pursuant to La.Rev.Stat. 40:967(C) which carries a sentence of imprisonment “with or without hard labor.” Because the punishment for a conviction for possession of cocaine is not necessarily confinement at hard labor, the defendant was properly tried before a jury of six persons. La. Const, art. I, § 17(A); La.Code Crim. Proc. art. 782. This claim is without merit.
 

 Assignment of Error 3
 

 The counsel for the defendant and the defendant,
 
 pro se,
 
 both argue that the defendant was deprived of his right to compulsory process when the trial court denied his motion for a continuance to secure the presence of witnesses, documents, and for DNA testing of the crack cocaine.
 

 The right of a defendant to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served and is embodied in both federal and state constitutions, as well as this state’s statutory law.
 
 State v. Lee,
 
 446 So.2d 334, 342 (La.App. 4 Cir.1984); La. Const. Art. I, § 16 (1974); La.Code Crim. Proc. art. 731. This right does not exist in a vacuum, however, and a defendant’s inability to obtain service of requested subpoenas is not an automatic ground for reversal of conviction or for a new trial.
 
 State v. Nicholas,
 
 97-1991, p. 17 (La.App. 4 Cir. 4/28/99), 735 So.2d 790, 799. Rather, the defendant must show prejudicial error by demonstrating that the testimony of 19the absent witness would be favorable to the defense and would indicate the possibility of a different result if the witness were to testify.
 
 Id,.; see also State v. Green,
 
 448 So.2d 782 (La.App. 2 Cir.1984). Prejudicial error arises where the absent witness is “vital” to the defense.
 
 State v. Peterson,
 
 619 So.2d 786, 790 (La.App. 4 Cir.1993);
 
 see also State v. Hill,
 
 534 So.2d 1296, 1298 (La.App. 4 Cir.1988) (prejudicial error occurred when all evidence presented to the jury boiled down to a head-to-head confrontation between defendant and a police officer and, accordingly, the absent defense witness’s testimony may have resulted in a different outcome). The decision to grant or deny a motion to continue is within the trial court’s discretion and, accordingly, denial of the motion is grounds for reversal only where defendant shows both abuse of the trial court’s discretion and specific prejudice. La.Code Crim. Proc. art. 712;
 
 see State v. Borne,
 
 96-1130, pp. 7-8 (LaApp. 4 Cir. 3/19/97), 691 So.2d 1281, 1985 (written motion required seven days prior to trial specifically alleging the grounds on which it is based and verified by the affidavit of the defendant or his counsel; the court may grant a continu-
 
 *506
 
 anee after contradictory hearing only upon showing that continuance is in the interest of justice);
 
 see also
 
 La.Code Crim. Proc. art. 709 (motion for continuance based upon the absence of a witness requires statement of the facts to which the absent witness is expected to testify, showing the materiality of the testimony and necessity of the witness’s presence; facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and facts showing due diligence used in an effort to procure attendance of the witness).
 

 In this case, the defendant moved for a third trial continuance asserting that he needed time to subpoena the witnesses who were under the overpass on the day | ipof his arrest and would testify on his behalf. On appeal, the defendant asserts that even though he knew the identity of these witnesses, he was unable to subpoena them because his appointed counsel did not help him find them. With regard to the DNA testing of the cocaine, the defendant failed to confirm in his motion that he had secured a DNA expert or that it was probable that such an expert would appear at a subsequent trial. Moreover, the record reflects that the defense was granted two prior trial continuances for the same purpose. Thus, the record does not support a finding that the trial court erred in denying defendant’s request for a continuance. This claim is without merit.
 

 Assignment of Error 4
 

 The defendant asserts that his life sentence imposed as a fourth offender is illegal because the State failed to prove he was a fourth felony offender. Specifically, the defendant alleges that the State failed to prove that the ten-year cleansing period did not lapse between his 1984 conviction for possession of stolen property and his 1997 conviction for unauthorized use of an access device card. However, the defendant did not object contemporaneously to the proof submitted by the state to support the allegations in the multiple bill and, accordingly, this issue is not preserved for review.
 
 [1]
 
 La.Code Crim. Proc. art. 841. Therefore, this claim has not been preserved for review.
 

 In addition, the defendant argues that his adjudication as a multiple offender should have been tried before a jury and, thus, adjudication as a multiple offender by the trial judge was a violation of his state and federal constitutional due process rights to a jury trial. Specifically, he asserts that because the jury verdict subjected Inhim to a sentence of zero to five years pursuant to La.Rev.Stat. 40:967(0(2), not the life sentence that he received, the determination of the noncriminal elements required by La.Rev.Stat. 15:529.1 (identity, ten-year lapse, and that the prior convictions occurred and were final before the instant conviction) must be determined by a jury beyond a reasonable doubt.
 

 The defendant did not enter a contemporaneous objection to the proceedings and, in any event, the Louisiana Supreme Court recently rejected this argument in
 
 State v. Jefferson,
 
 08-2204 (La.12/1/09), 26 So.3d 112, holding “that the Sixth and Fourteenth Amendments, as construed in
 
 Apprendi
 
 and its progeny, do not preclude the sentence-enhancing use, against an adult, of a prior valid, fair and reliable conviction of a misdemeanor proceeding obtained as an adult, where the
 
 *507
 
 misdemeanor proceeding included all the constitutional protections applicable to such proceedings, even though these protections do not include the right to a jury trial.”
 
 Jefferson,
 
 26 So.3d at 112;
 
 see also State v. Smith,
 
 05-0375, pp. 2-3 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 838 (under
 
 Apprendi
 
 the defendant’s prior convictions were not required to be submitted to a jury). Thus, this claim is without merit.
 

 Finally, the defendant argues that his life sentence is unconstitutionally excessive because his recidivism was caused by his drug addiction and, therefore, a life sentence constitutes cruel and unusual punishment. Article I, Section 20 of the Louisiana Constitution of 1974 provides that “[n]o law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive only if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.”
 
 State v. Caston, All
 
 So.2d 868, 871 (La.App. 4 Cir.1985). [^Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La. Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case.
 
 State v. Soco,
 
 441 So.2d 719 (La.1983). Thus, where adequate compliance with La. Code Crim. Proc. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.
 
 State v. Quebedeaux,
 
 424 So.2d 1009, 1014 (La.1982). The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. La.Code Crim. Proc. art. 881.4(D).
 

 After considering the testimony adduced at trial and the record offered in support of the multiple bill, the trial court articulated the following reasons before imposing sentence:
 

 ... I’m confronted with what you have been capable of during your 52 years on this earth. The molestation, the sexual molestation, the ultimate pleas of guilty to battery, sexual battery, the touching, the improper activity of a highly offensive nature with two little girls, not one but two ... I’ve come to the conclusion that you are — and this is the only other word I can use, a manipulator.... Apparently, you have manipulated this system over the years.... You do know, you do understand.
 

 * * ⅜
 

 I think Mr. Juengain has manipulated the system that he has been involved in over a significant period of time... .To be peddling this trash, this filth, under that overpass....
 

 [[Image here]]
 

 ... You’ve been given no less than seven opportunities, seven times. You’ve been sentenced to jail repeatedly. You’ve been given probation repeatedly.... Every conceivable thing that could have jabeen done for you was done. The system bent over backwards, despite your repeated rejection of what the system offered.
 

 * * *
 

 ... I am afraid your actions have convinced me that your are never prepared to enter society again, to be given what would be the eighth chance, if not the ninth, not counting the misdemeanors.
 
 *508
 
 If we count those, it would be at least the 11th chance because your conviction by jury in the case is your 8th felony conviction and you’re only 52 years of age. The greatest, the greatest problem with this all is you obviously are a man of uncanny ability, to research law, to quote law, to represent yourself.... In between you have filled yourself with cocaine, you’ve abused police officers .... And its all been about you and fulfilling your filthy, dirty, selfish needs....
 

 In this case, the defendant’s most recent offense involved only a single piece of crack cocaine, but two of his prior convictions were crimes of violence; sexual battery and molestation of a juvenile, are crimes of violence. Additionally, the defendant was fifty-two years old at the time of sentencing and had been convicted of eight felonies and three misdemeanors. Accordingly, considering the record as a whole, we do not find that the defendant met his burden of proving that his life sentence is unconstitutionally excessive.
 
 See State v. Finch,
 
 97-2060, p. 13 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, 1027-1028 (where a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh). This claim is without merit.
 

 Pro Se Assignment of Error 1
 

 The defendant asserts that at the September 24, 2008, status hearing he did not state that he wanted to represent himself without co-counsel. He accuses the court reporter of incorrectly transcribing, at the direction of the trial court, that he stated that at no time did he file a motion for co-counsel. He claims that because he filed a motion to recuse, the trial court vindictively manipulated the record to deny him his constitutional right to counsel. He further argued that he did file a 114motion for co-counsel on October 3, 2008, but the Clerk of Court, at the direction of the trial court, failed to stamp a filing date on the motion. These claims are self-serving, are not supported by any evidence, and, accordingly, are without merit.
 

 Conclusion
 

 The defendant has filed a motion to remand asserting that, pursuant to La. Code Crim. Proc. art. 853, he filed a motion for a new trial in the district court on October 9, 2009. The defendant’s motion for a new trial appears to be timely filed under La.Code Crim. Proc. art. 853 and, accordingly, we affirm his conviction and sentence conditionally and remand the matter back to the district court for consideration of the motion for a new trial.
 

 AFFIRMED CONDITIONALLY; MOTION TO REMAND GRANTED.
 

 [1]
 

 . Moreover, a review of the record indicates that on June 16, 1988, the defendant was resentenced on Count 2 of his 1984 conviction, such sentence to run concurrent with his 15-year sentence on Count 1 under the Habitual Offender Statute and, accordingly, the claim appears to be without merit.